ELLEN F. ROSENBLUM
Attorney General
BRIAN SIMMONDS MARSHALL  #196129
Senior Assistant Attorney General
ALEX C. JONES #213898
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.state.or.us
            Alex.C.Jones@doj.state.or.us

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| OREGON RIGHT TO LIFE,<br><br>Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF CONSUMER AND BUSINESS SERVICES and ANDREW R. STOLFI, in his official capacities as Department of Consumer and Business Services Director and Oregon Insurance Commissioner,<br><br>Defendants. | Case No.  6:23-cv-01282-MK<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

        A.      The Reproductive Health Equity Act.......................................................... 2

        B.      Oregon Right to Life ................................................................................... 4

        C.      This Case...................................................................................................... 7

III.    LEGAL STANDARDS ........................................................................................... 8

IV.     ARGUMENT........................................................................................................... 9

        A.      ORTL's Delay in Filing This Action Bars a Preliminary Injunction...................... 9

        B.      ORTL Is Unlikely to Succeed on the Merits of Its Claims.................................... 9

                1.      RHEA Does Not Burden ORTL's Free Exercise of Religion. ................... 9

                        a.      The special protection of the Free Exercise Clause applies
                                only to beliefs that are sincerely held and that are religious
                                in nature. ................................................................................. 10

                        b.      ORTL, as an issue-advocacy corporation with no religious
                                requirements for its members, employees, officers, or
                                directors, does not hold religious beliefs for the purposes of
                                the Free Exercise Clause. ....................................................... 11

                                i.      ORTL is not similar to nonprofit corporations that
                                        exercise religion in their own right. ............................... 12

                                ii.     ORTL, as a broad membership organization that
                                        imposes no requirement of religious belief, is not
                                        like closely-held corporations that exercise their
                                        owners' shared religious beliefs....................................... 14

                                iii.    ORTL's governing structure and the underlying
                                        state law do not indicate that ORTL, as a
                                        corporation, holds religious beliefs................................. 15

                        c.      ORTL has not shown that ORTL itself has a religious belief
                                that covering the specified four types of "abortifacient
                                'contraceptives'" in its health-benefit plan involves
                                forbidden abortion complicity........................................................ 17

                2.      RHEA Survives Rational Basis Review. .................................................. 18

Page ii -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
            INJUNCTION

a.    Under *Employment Division v. Smith*, RHEA is subject to rational basis review. .................................................................. 19

    i.    RHEA is generally applicable......................................... 19

        (A)    Underinclusivity.................................................... 19

        (B)    Individualized Exemptions .................................. 21

    ii.    RHEA is neutral.............................................................. 22

b.    RHEA is rationally related to the State's interest in facilitating reproductive freedom.................................................. 23

C.    The Balance of the Equities Disfavors a Preliminary Injunction ........................ 24

    1.    ORTL has not shown irreparable harm...................................................... 24

    2.    The balance of equities disfavors an injunction....................................... 24

V.    CONCLUSION................................................................................................................. 25

Page iii -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
              INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*Advoc. Health Care Network v. Stapleton*, 581 U.S. 468 (2017) ................................................. 22

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................................... 8

*Am. Friends Serv. Comm. Corp. Thornburgh*, 951 F.2d 957 (9th Cir. 1991).............................. 12

*Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401 (9th
   Cir. 1991) ...................................................................................................................... 24

*Benisek v. Lamone*, 138 S. Ct. 1942 (2018).............................................................................. 8, 9

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 672 (2014) ...................................... 12, 14, 16, 23

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993)........................ 20, 22

*Coal. for Econ. Equity v. Wilson,* 122 F.3d 718 (9th Cir. 1997) ................................................. 25

*Droz v. Comm'r of IRS*, 48 F.3d 1120 (9th Cir. 1995) ..................................................... 10

*E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832 (9th Cir. 2020)................................................. 9

*E.E.O.C. v. Fremont Christian School*, 781 F.2d 1362 (9th Cir. 1986) ...................................... 12

*E.E.O.C. v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1274 (9th Cir. 1982) .............................. 12

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988)................................. 12, 14

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990)............................. 19, 21

*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307 (1993)................................................................ 23

*Foothill Church v. Watanabe*, 623 F. Supp. 3d 1079 (E.D. Cal. 2022)....................................... 21

*Fulton v. Philadelphia*, 141 S. Ct. 1868 (2021)....................................................................... 19, 21

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013) ..................... 9

*Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ........................................................... 10

*Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3d Cir.
   2007) .............................................................................................................................. 21

*Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151 (10th Cir. 2015)........... 23

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ........................................................................ 8

Page iv -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
          INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Maryland v. King*, 567 U.S. 1301 (2012) ................................................................. 25

*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477 (6th Cir. 2020) ................................................................................................................. 20

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................. 8, 24

*Oregon Firearms Fed'n v. Kotek*, No. 2:22-CV-01815-IM, 2023 WL 4541027 (D. Or. July 14, 2023) ..................................................................................................... 22

*Raidoo v. Moylan*, 75 F.4th 1115 (9th Cir. 2023) ...................................................... 24

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338 (3d Cir. 2017) ................................................................................................................. 13

*Regino v. Staley*, No. 2:23-CV-00032-JAM-DMC, 2023 WL 2432920 (E.D. Cal. Mar. 9, 2023) ................................................................................................................. 9

*Rollins v. Dignity Health*, 830 F.3d 900 (9th Cir. 2016) ...................................... 22, 23

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) ....................... 21

*San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997 (N.D. Cal. 2014) ........................................................................... 24

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ........................................................ 8, 24

*St. Elizabeth Cmty. Hosp. v. N.L.R.B.*, 708 F.2d 1436 (9th Cir. 1983) ....................... 12

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ................................ 14, 20, 21, 22, 23

*Stormans, Inc. v. Wiesman*, 794 F.3d 1064 (9th Cir. 2015)................................... 19, 23

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981) .......................... 11

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) ................................................... 19

*United States v. Lee*, 455 U.S. 252 (1982) ................................................................ 19

*United States v. Seeger*, 380 U.S. 163 (1965) ........................................................... 10

*United States v. Ward*, 989 F.2d 1015 (9th Cir. 1992) ..................................... 10, 11, 18

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89 (9th Cir. 2009) ................................................................................................................. 25

*Walker v. Beard*, 789 F.3d 1125 (9th Cir., 2015) ...................................................... 11

*Welsh v. United States*, 398 U.S. 333 (1970) ............................................................ 11

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) .............................................. 8, 24

Page v -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) ................................................................................. 11

*Zubik v. Burwell*, 136 S.Ct. 1557 (2016) ................................................................................ 23

**Statutes**

Or. Laws 2017, Ch. 721 ........................................................................................................ 2, 9

ORS 731.988.............................................................................................................................. 3

ORS 743A.066............................................................................................................... 3, 20, 23

ORS 743A.067........................................................................................................... 2, 3, 20, 23

**United States Code**

26 U.S.C. § 6033.................................................................................................................... 23

Page vi -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
     INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## I.  INTRODUCTION

The Reproductive Health Equity Act generally requires that health insurance plans in Oregon cover abortion and any federally approved contraceptive drug, device, or product without cost-sharing. Oregon Right to Life (ORTL) filed this as-applied challenge the law under the Free Exercise Clause. It now seeks a preliminary injunction, which should be denied for three reasons.

First, ORTL filed its lawsuit too late to obtain a preliminary injunction. Oregon enacted the law ORTL challenges in 2017. ORTL filed this case more than six years later. As the U.S. Supreme Court has held, waiting six years to file a lawsuit does not demonstrate the reasonable diligence that a preliminary injunction requires. *See* IV.A, below.

Second, the law does not burden ORTL's religious exercise. At core, ORTL is not a religious entity; rather it is an advocacy organization that has no religious test for membership. While there is no doubt that ORTL sincerely objects to abortion and certain forms of contraception, or that some of its constituents are motivated by their religious beliefs, the organization itself does not have a *religious* objection to abortion or certain contraception. Indeed, its executive director could not identify a single time outside of this litigation that ORTL described its opposition to abortion or contraception as a religious belief. Because ORTL's opposition to abortion and certain contraception is not religious in nature, it has no claim under the Free Exercise Clause. *See* IV.B.1, below.

Third, as a neutral law of general applicability, the Reproductive Health Equity Act is consistent with Free Exercise Clause. ORTL argues that the exceptions to the law's coverage requirements mean the law is not generally applicable, but none of those exceptions disfavor religious exercise. Quite the opposite: they accommodate religious objections to the law. As such, the law is subject to rational basis review, which is easily satisfied by the state interest in access to reproductive health care. *See* IV.B.2, below.

The motion for a preliminary injunction should therefore be denied.

Page 1 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
            INJUNCTION
            BM2/jt3/

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.  BACKGROUND

### A.    The Reproductive Health Equity Act

In 2017, the Oregon Legislative Assembly enacted HB 3391, the Reproductive Health Equity Act (RHEA). *See* Or. Laws 2017, Ch. 721 (§ 2 codified at ORS 743A.067[1]). Among other things, RHEA provides that "A health benefit plan offered in this state must provide coverage for … (g) Abortion. …[and] (j) Any contraceptive drug, device or product approved by the United States Food and Drug Administration …." ORS 743A.067(2).

RHEA prohibits a health benefit plan from requiring "a deductible, coinsurance, copayment or any other cost-sharing requirement" or "any restrictions or delays" for the required benefits. ORS 743A.067(3)–(4). In addition, "[a] health benefit plan may not infringe upon an enrollee's choice of contraceptive drug, device or product and may not require prior authorization, step therapy or other utilization review techniques for medically appropriate covered contraceptive drugs, devices or other products approved by the United States Food and Drug Administration," ORS 743A.067(2)(j)(D), among other requirements.

The statute provides for three exceptions to its insurance coverage requirements:

- The religious employer exception provides: "An insurer may offer to a religious employer a health benefit plan that does not include coverage for contraceptives or abortion procedures that are contrary to the religious employer's religious tenets," so long as the insurer notifies enrollees in writing. ORS 743A.067(9). For the purpose of the statute, "[a] 'religious employer' is an employer: (a) Whose purpose is the inculcation of religious values; (b) That primarily employs persons who share the religious tenets of the employer; (c) That primarily serves persons who share the religious tenets of the employer; and (d) That is a nonprofit

---

[1] Although the Reproductive Health Equity Act contains other provisions, this brief's references to RHEA only concern Section 2, the only provision at issue in this case.

Page 2 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

organization under section 6033(a)(3)(A)(i) ["churches, their integrated auxiliaries, and conventions or associations of churches"] or (iii) ["the exclusively religious activities of any religious order"] of the Internal Revenue Code." ORS 743A.066(4) (incorporated by reference in RHEA at ORS 743A.067(1)(e)).

- The legacy exception (or "grandfather clause"), which provides that RHEA "does not require a health benefit plan to cover … [a]bortion if the insurer offering the health benefit plan excluded coverage for abortion in all of its individual, small employer and large employer group plans during the 2017 plan year." ORS 743A.067(7)(e). As ORTL alleges, that language accommodates Providence Health Plan's faith-based objection to providing coverage for abortion, Compl. ¶¶ 50–51, 81. Providence is one of only two insurers who qualify for the exception. *See* Jones Decl., Attach. 1 (email dated September 27, 2017, from Rick Barry, Health Policy Analyst, DCBS/Division of Financial Regulation, RE: Applicability of section 2 of HB 3391).

- The federal funds exception provides: "If the Department of Consumer and Business Services concludes that enforcement of this section may adversely affect the allocation of federal funds to this state, the department may grant an exemption to the requirements but only to the minimum extent necessary to ensure the continued receipt of federal funds." ORS 743A.067(10).  This provision was enacted to ensure compliance with "the Weldon Amendment (a federal-funds conscience provision)…." Compl. ¶ 48.

Like other provisions of the Insurance Code, the Director of the Oregon Department of Consumer and Business Services (DCBS) is empowered to enforce RHEA's insurance coverage requirements through civil penalties.  ORS 731.988.

Page 3 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
             INJUNCTION
           BM2/jt3/

**B.    Oregon Right to Life**

Oregon Right to Life (ORTL) "is a prolife-issue-advocacy, nonprofit, Oregon corporation," organized as a public benefit corporation under Oregon law. Compl. ¶ 19; Jones Decl., Attach. 2 at 2 (Articles of Incorporation). ORTL's Executive Director has described the corporation as "a membership organization, comprised of numerous individuals who join because they agree with ORTL's pro-life principles and provide at least modest financial support." Jones Decl., Attach. 3 at 1 (Declaration of Lois Anderson In Support of ORTL's Exemption Request). ORTL asserts that it "has over 25,000 members and supporters in Oregon." Compl. ¶ 14. ORTL does not have a religious test for membership, employment, or serving as an officer or director. Jones Decl. Attach. 4 at 45:16–24 (Anderson Depo.).

ORTL is controlled by a board of directors, two of whom are elected by its members. The board of directors has the power to amend the corporation's articles of incorporation and its bylaws, both of which state the corporation's "purposes." Jones Decl. Attach. 2 at 4–5 (Articles of Incorporation); *see also* Jones Decl. Attach. 10 at 1, 6 (Restated Bylaws of Oregon Right to Life (Restatement of August 17, 2019)). The board is also responsible for adopting "position statements for the corporation concerning life issues." Jones Decl. Attach. 10 at 4 (Bylaws).

Although directors are not required to hold religious beliefs, they must express commitment to the "specific purposes of the corporation," which are to be "carried out with integrity and nonviolence, and by means consistent with traditional Judeo-Christian ethics." Jones Decl., Attach. 2 at 3–4 (Articles of Incorporation). ORTL's "specific purposes" include "[p]roclaiming the inherent dignity of human life," "[a]dvocating and lobbying for the most vulnerable innocent human beings," and "[o]pposing abortion, assisted suicide, euthanasia, infanticide, and human life-destroying research." Jones Decl., Attach. 2 at 3–4 (Articles of Incorporation). Directors must also express adherence to certain "personal life perspectives," including that innocent human life is "the first good and fundamental to all other human goods," that the right to that life is "first and fundamental of all human rights," and that the termination

Page 4 -    DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
               INJUNCTION
               BM2/jt3/

of such life "at any stage from fertilization and natural death is never an acceptable or just 'solution' to social problems." Jones Decl., Attach. 2 at 3 (Articles of Incorporation).

Directors, as well as officers and employees, must subscribe to ORTL's "mission" and its "position statements" on issues including abortion and contraceptives. Compl. ¶ 26; Jones Decl., Attach. 4 at 30:16–18, 44:21–45:12 (Anderson Depo). ORTL's "mission" states that ORTL "advocates for the most vulnerable human beings whose right to life is denied or abridged under current law, and that it "work[s] to reestablish protection for all innocent human life from conception to natural death." Jones Decl., Attach. 5 at 1 (ORTL Mission Statement). ORTL's position statement on abortion states that ORTL "believes in the sanctity of all human life from the moment of conception to natural death" and "oppose[s] abortion at any point of gestation." Compl. ¶ 26. ORTL's "position statement" on "contraceptives" states that "[o]nce [a] sperm and egg have united, . . . a new human life begins and ORTL opposes any drug, device, or procedure which destroys the new human life." Jones Decl., Attach. 6 at 2 (Position Statements). Directors, officers, and employees are not required to hold these positions as religious beliefs. Jones Decl., Attach. 4 at 45:16–22 (Anderson Depo.).

None of ORTL's governing documents—its articles of incorporation, its bylaws, its mission, or its position statements—refer to ORTL's opposition to abortion as a "religious belief." ORTL's Executive Director, when asked, could not recall an instance, outside of this litigation, when ORTL had referred to its opposition to abortion as a religious belief. Jones Decl., Attach. 4 at 54:21–24 (Anderson Depo.).

ORTL's articles of incorporation, bylaws, mission, and position statements do not express any view on whether or when providing comprehensive health insurance is wrongful. Since 2015, ORTL has provided a health benefit plan for its employees through Providence Health Plans (PHP), which includes coverage for "'contraceptives' that can act as abortifacients." Jones Decl., Attach. 3 at 6 (Anderson Declaration); Compl. ¶¶ 40, 42. ORTL

Page 5 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

been aware of this coverage since no later than April 2019. Jones Decl., Attach. 4 at 62:1–63:25 (Anderson Depo.); Jones Decl., Attach. 3 at 6 (Anderson Declaration).

ORTL lobbied against HB 3391 as it was being considered by the legislature in 2017. Compl. ¶ 50. Colm Willis, testifying for ORTL, objected to the requirement that all health-benefit plans in the state cover "abortion."[2] Willis did not specifically refer to contraceptives or abortifacients. ORTL's Executive Director did not recall any time during the legislative process that ORTL raised the issue of Providence Health Plans' coverage of contraceptives. Jones Decl., Attach. 4 at 48:22–49:3 (Anderson Depo.).

In April 2019, after RHEA had been enacted and had gone into effect, ORTL submitted a request to DCBS for "an exemption from the abortion-related health-insurance coverage mandated by § 2" of RHEA. Jones Decl., Attach. 3 at 1 (Anderson Declaration). In a declaration in support of that request, the Executive Director explained that ORTL had "recently learned that its prior insurance includes coverage for 'contraceptives' that can act as abortifacients—which ORTL opposes and objects to providing." Jones Decl., Attach. 3 at 6 (Anderson Declaration); *see* Jones Decl., Attach. 4 at 6:6–8, 62:1–63:25 (Anderson Depo.) (explaining that ORTL discovered this sometime between September 2017 and April 2019). ORTL's exemption request was brought under the Weldon Amendment. Compl. ¶ 48. But the "Trump administration interpretations of Weldon's provisions" on which ORTL based its argument for an exemption were "changed in the next administration." Compl. ¶ 83 n.10. DCBS did not grant the exemption. Compl. ¶ 48.

---

[2] Oregon House Committee on Health Care first Public Hearing on RHEA, at 23:00–25:18 (March 15, 2017), available at invintus-client-media.s3.wasabisys.com/4879615486/oregon_f9ea023c-9fcb-4e89-8ede-062410b792aa.mp4; Joint Committee on Ways and Means, HHS Hearing on 3391, at 6:00–8:20 (June 28, 2017), available at https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID=4879615486&eventID=2017061181.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

At some point during the Trump administration, ORTL filed a complaint with the Office for Civil Rights of U.S. Department of Health and Human Services (HHS). Jones Decl., Attach. 4 at 51:7–21 (Anderson Depo.). ORTL's Executive Director testified that she believes that complaint is still open. Jones Decl., Attach 4 at 52:3–8 (Anderson Depo.).

Other than the request for exemption filed with DCBS in 2019 and the complaint filed with HHS in or before January 2021, ORTL took no action to seek relief from RHEA until the filing of the present action. Jones Decl., Attach. 4 at 52:9–14 (Anderson Depo.).

## C.    This Case

On September 5, 2023, ORTL filed its Verified Complaint in this case. Compl., p. 32. The Complaint argues that RHEA's requirement of coverage for "abortion-related and contraceptive-related services," as applied to ORTL, violates the Free Exercise Clause of the First Amendment. Compl. ¶¶ 2, 57, 98.

The Complaint states that "ORTL objects on religious grounds to providing insurance coverage in its health-benefit plan for (i) abortion (except to save the mother's life) and (ii) 'contraceptives' that act as abortifacients." Compl. ¶ 8. The Complaint further specifies that the "'contraceptives' that act as abortifacients" include "(a) Plan B (levonogestrel), (b) Ella (ulipristal acetate), (c) copper IUDs (like ParaGard), and (d) IUDs with progestin—or any comparable 'contraceptives' of the same type and chemical makeup that can also act as abortifacients." Compl. ¶ 53. "ORTL wants a plan covering abortion only in case of imminent danger to the mother's life and not covering abortifacient 'contraceptives.'" Compl. ¶ 43. Because RHEA bars ORTL from obtaining such a plan, ORTL argues that the law unconstitutionally burdens "ORTL's sincerely held religious belief . . . that covering abortion and abortifacient 'contraceptives' in its health-benefit plan involves forbidden abortion complicity." Compl. ¶ 57.

ORTL's Complaint seeks declaratory and injunctive relief, including "[p]reliminary and permanent injunctions ordering Defendants to treat ORTL as 'religious employers' are treated,

Page 7 -    DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

BM2/jt3/

[RHEA] § 2(9), enjoining Defendants from enforcing the Mandate against ORTL or any insurer in any way differently than for 'religious employers,' and direct any present or future ORTL health-benefit plan provider to accommodate ORTL's religious beliefs[.]" Compl. at p. 30 (Prayer for Relief).

On September 12, ORTL filed this Motion for Preliminary Injunction seeking the same injunctive relief requested in the Complaint. PI Mot. (ECF #11) at 6. ORTL also asked that the Court consolidate the hearing on the preliminary injunction with a trial on the merits (ECF #13), which Defendants opposed (ECF #20).

## III.  LEGAL STANDARDS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis original). To obtain a preliminary injunction, plaintiffs must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). When the government is a party, courts consider the last two factors together, because the defendants' equities merge with the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A plaintiff must establish each of the elements. *Winter*, 555 U.S. at 20–21. In addition, "a party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curium).

"[S]erious questions going to the merits" combined with a balance of hardships that tips sharply towards the plaintiff can satisfy those two factors together, so long as the plaintiff also shows that there is a likelihood of irreparable injury. *See All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Because the balance of equities and public interest are considered together, the *Alliance* balancing test requires a plaintiff to show that its claim raises

Page 8 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
              INJUNCTION
         BM2/jt3/

serious constitutional questions and that the balance of equities tips sharply in its favor—that is, that their own irreparable injury in complying with the law while the case is decided greatly exceeds the public interest served by the law.

"[T]he rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013). If a court issues a preliminary injunction, it must be no broader "than necessary to provide complete relief to the plaintiffs before the court." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 855–56 (9th Cir. 2020).

## IV.  ARGUMENT

### A.    ORTL's Delay in Filing This Action Bars a Preliminary Injunction

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 138 S. Ct. at 1944 (affirming, without dissent, denial of preliminary injunction of redistricting plan that had been in effect for six years before the preliminary injunction was sought); *see also Regino v. Staley*, No. 2:23-CV-00032-JAM-DMC, 2023 WL 2432920, at *4 (E.D. Cal. Mar. 9, 2023) (citing Ninth Circuit law, finding that a nine-month delay weighs against awarding a preliminary injunction). The provision ORTL challenges was enacted in 2017. *See* Or. Laws 2017, Ch. 721. ORTL opposed the bill in the legislative process. Compl. ¶ 50.  ORTL has pursued various other avenues to gain relief from the law since 2019. *See* Jones Decl., Attach. 4 (Anderson Depo.) at 50:6–52:14. Had Plaintiffs filed suit when the law was first enacted, a final judgment would likely have been entered on its claims, after discovery and a trial, if needed. Given ORTL's delay in filing suit, the motion for a preliminary injunction should be denied for that reason alone.

### B.    ORTL Is Unlikely to Succeed on the Merits of Its Claims

#### 1.    RHEA Does Not Burden ORTL's Free Exercise of Religion.

The Free Exercise Clause requires that the State "shall make no law . . . prohibiting the free exercise [of religion]." A free-exercise plaintiff must show, as an initial matter, that the

Page 9 -   DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
            INJUNCTION
        BM2/jt3/

challenged state action "substantially burdens a sincerely held religious belief." *Droz v. Comm'r of IRS*, 48 F.3d 1120, 1122 (9th Cir. 1995). That is, the plaintiff must show that the action "tends to coerce the [plaintiff] to forego [its] sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015).

Here, ORTL contends that RHEA violates ORTL's free-exercise rights because it conflicts with ORTL's belief "that covering abortion and abortifacient 'contraceptives' in its health benefit plan involves forbidden abortion complicity." Compl. ¶¶ 56–57. But ORTL has not shown that ORTL itself—a non-profit corporation that is not affiliated with any religious group and that does not require any of its members, employees, officers, or directors to hold any religious beliefs—holds "*religious* beliefs" at all. Further, ORTL has not shown that the specific belief on which its claim relies is a belief of the corporation itself or that such a belief, as held by the corporation, is *religious* in nature. For those reasons, ORTL has not shown that RHEA substantially burdens its religious beliefs.

### a. The special protection of the Free Exercise Clause applies only to beliefs that are sincerely held and that are religious in nature.

The Free Exercise Clause protects only "sincerely held religious belief[s]." *Droz*, 48 F.3d at 1122. ORTL argues that its asserted beliefs in this case "cannot be gainsaid" and "must be accepted as stated." Mot. for P.I. at 29 (ECF #11 at 34). While the Court may not determine the "truth or falsity" of ORTL's beliefs, the Court "must determine as a threshold matter . . . whether the beliefs professed [by ORTL] are sincerely held and whether they are, in [ORTL's] own scheme of things, religious." *United States v. Ward*, 989 F.2d 1015, 1017–18 (9th Cir. 1992) (internal quotation marks omitted).

Consequently, this court "must determine" whether the asserted beliefs are, in fact, "held" by the plaintiff. *Ward*, 989 F.2d at 1017–18; *see also United States v. Seeger*, 380 U.S. 163, 185 (1965) (for purposes of conscientious-objector statute, "while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held'").

Page 10 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
        BM2/jt3/

A court must *also* determine whether a plaintiff's asserted belief is, "in [the plaintiff's] own scheme of things, religious." *Ward*, 989 F.2d at 1018. "Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981). To merit that special protection, a religious belief "need not be acceptable, logical, consistent, or comprehensible to others." *Id.* at 714. But it must be religious. That is, the belief must "stem from [the plaintiff's] 'moral, ethical, or religious beliefs about what is right and wrong' and [must be] 'held with the strength of traditional religious convictions.'" *Ward*, 989 F.2d at 1018 (quoting *Welsh v. United States*, 398 U.S. 333, 340 (1970)). A free exercise claim may not be rooted in "purely secular philosophical concerns." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir., 2015) (internal quotation marks omitted). "Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

Here, ORTL's asserted belief is that "covering abortion and abortifacient 'contraceptives' in its health benefit plan involves forbidden abortion complicity." Compl. ¶ 57. While this Court may not question the truth or logic of that belief, the Court "must determine as a threshold matter" whether the asserted belief is actually held by ORTL and, if so, whether it is, in ORTL's "own scheme of things, religious." *See Ward*, 989 F.2d at 1017–18.

        **b.**       **ORTL, as an issue-advocacy corporation with no religious requirements for its members, employees, officers, or directors, does not hold religious beliefs for the purposes of the Free Exercise Clause.**

ORTL has not shown that ORTL itself holds religious beliefs. ORTL is not similar to other corporations that courts have recognized as exercising religion in their own right. ORTL is not a religious nonprofit and it is not affiliated with any religious group or institution. Nor is ORTL comparable to a family-owned business that functions as an "extension" of the family

Page 11 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
     INJUNCTION
    BM2/jt3/

members' shared religious beliefs. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 619 (9th Cir. 1988). Unlike those companies, ORTL is "comprised of numerous individuals," none of whom are required to hold religious beliefs of any kind. Jones Decl., Attach 4 at 45:16–46:8 (Anderson Depo.); Jones Decl., Attach. 3 at 1 (Anderson Declaration); Compl. ¶ 14. Further, to the extent that a corporation's religious beliefs can be discerned from the "governing structure" of the corporation and "the underlying state law," *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 672, 718–19 (2014), ORTL's structure and legal status do not establish any such belief, held by the corporation, that is religious in nature. None of the indicators of a corporate religious belief is present here.

> **i.    ORTL is not similar to nonprofit corporations that exercise religion in their own right.**

First, ORTL is not similar to the "religious organizations" and "organizations with religious elements" that have been recognized as exercising religion in their own right under the Free Exercise Clause. *See Townley*, 859 F.2d at 620 n.15 (listing cases). Those organizations include pervasively religious institutions, such as churches, as well as other organizations marked by "religious elements," such as religiously affiliated hospitals and schools. *Id.* The Ninth Circuit has often assumed without discussion that an organization has free-exercise rights when it has those "religious elements," such as being owned by or affiliated with a religious institution or denomination or engaging principally in religious activity. *See id.*; *E.E.O.C. v. Fremont Christian School*, 781 F.2d 1362, 1364 (9th Cir. 1986) ("church-owned and operated private school," which required each of its employees to be a member of an evangelical church and to "subscribe to specific tenets of faith"); *St. Elizabeth Cmty. Hosp. v. N.L.R.B.*, 708 F.2d 1436, 1438 (9th Cir. 1983) (hospital "owned and operated by a religious order of the Catholic Church"); *E.E.O.C. v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1274, 1282 (9th Cir. 1982), *abrogated on other grounds as recognized by Am. Friends Serv. Comm. Corp. Thornburgh*, 951 F.2d 957, 960 (9th Cir. 1991) ("nonprofit religious publishing house" that was "affiliated with

Page 12 - DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

the Seventh-Day Adventist Church," required all its employees to be "members of the church," and "publishe[d] only religious and religiously-oriented materials").

ORTL lacks those religious elements. ORTL is not affiliated with any religious denomination or institution. It does not require its members, employees, officers, or directors to hold any religious beliefs. Jones Decl., Attach 4 at 45:16–24 (Anderson Depo.). Nor is ORTL engaged in religious activity. ORTL acknowledges that "[ORTL']s purpose is prolife advocacy, not inculcating religious values." Compl. ¶ 8. Abortion opponents do not necessarily view their advocacy as religious. *See, e.g.*, *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 345 (3d Cir. 2017) (considering claims brought by a "nonreligious" "anti-abortion organization," which opposed abortion and believed contraceptives to be "morally wrong" "based on science, reason, and non-religious philosophical principles").

Indeed, ORTL's position statements and governing documents describe its positions in terms that are not religious in nature and that closely resemble the language used by other secular organizations that oppose abortion. For example, ORTL's position statement on abortion refers to a belief in "the sanctity of all human life." This language is substantially the same as the language used in the official platforms of the Oregon Republican Party and the U.S. Republican Party—broad political organizations that, like ORTL, oppose abortion, support a "right to life," and have no religious criteria for membership. *See* Compl. ¶ 30 ("[ORTL] believes in the sanctity of all human life from the moment of conception to natural death."); Jones Decl., Attach 7 at 7 (Oregon Republican Party 2021 Platform) ("Every person has a fundamental right to life . . . ."), 9 ("We support the sanctity of life from conception to natural death."); Jones Decl., Attach 8 at 20 (Republican Platform 2016) ("[W]e assert the sanctity of human life and affirm that the unborn child has a fundamental right to life which cannot be infringed."). ORTL's articles of incorporation refer to religious tradition only insofar as they provide that ORTL's purposes "shall be carried out with integrity and nonviolence, and by means consistent with traditional Judeo-Christian ethics[.]" That ethical limitation on ORTL's "means" does not require an

Page 13 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
        INJUNCTION
          BM2/jt3/

adoption of any religious beliefs. *See* Jones Decl., Attach. 2  at 4 (Articles of Incorporation). As the Executive Director's testimony confirms, commitment to the purposes and principles in ORTL's governing documents does not require that any person associated with ORTL to hold any religious beliefs at all. *See* Jones Decl., Attach. 2 at 3 (Articles of Incorporation) (directors must express commitment to the specific written purposes and policies of the corporation"); Jones Decl., Attach 4 at 45:16–24 (Anderson Depo.) (no religious beliefs required to be a director).

> **ii.**      **ORTL, as a broad membership organization that imposes no requirement of religious belief, is not like closely-held corporations that exercise their owners' shared religious beliefs.**

Second, ORTL is not similar to the family-owned corporations that have successfully asserted free-exercise claims to exercise their owners' religious beliefs. When a corporation itself is not clearly religious in nature, the Ninth Circuit has sometimes looked to the shared religious beliefs of the corporation's owners, while declining to consider the "abstract issue" of whether the corporation has free-exercise rights of its own. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 619–20 (9th Cir. 1988); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). But the Ninth Circuit has endorsed that approach only when the corporation is owned by a small group of individuals who undisputedly share the same religious beliefs, such that the corporation "presents no rights of its own different from or greater than its owners' rights." *Townley*, 859 F.2d at 620; *see id.* at 611–12 (corporation was founded and 94%-owned by Jake and Helen Townley, who "made a covenant with God that their business 'would be a Christian, faith-operated business'"); *Stormans*, 586 F.3d at 1120 (corporation was a "family-owned business whose shareholders and directors [were] made up entirely of members of the Stormans family," and "all the owners" shared the religious belief at issue).

Similarly, in *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court held that closely held corporations could assert the religious beliefs of their owners, for the purposes of the

Page 14 - DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

Religious Freedom Restoration Act (RFRA). 573 U.S. 682, 717 (2014). Those corporations were each "owned and controlled by members of a single family" who all undisputedly shared the same sincerely held religious beliefs. *See id.* at 701–03 (the Hahns "exercise[d] sole ownership" of Conestoga Wood Specialties Corporation, "control[led] its board of directors[,] and h[e]ld all of its voting shares"; the Greens held "exclusive control" of Hobby Lobby Stores and Mardel). The Supreme Court held that the corporations themselves were "persons" that could assert RFRA claims. *Id.* at 707–09. But the Court relied, in part, on the applicable statutory definition of "person," and noted that RFRA's "very broad protection for religious liberty" went "far beyond what [the] Court has held is constitutionally required." *Id.* at 706–08.

The Supreme Court's approach to a corporate "religious belief" under RFRA is the same in substance as the Ninth Circuit's approach to similar claims under the Free Exercise Clause. Each court has indicated that a closely-held corporation can assert the religious beliefs of its owners because it was "owned and controlled by a members of a single family" and it was not disputed that family members religious beliefs were aligned with one another and with the relevant practice of the corporate entity.  *See id.* at 717.

ORTL is not comparable to those family-owned corporations. Rather than being owned by a small number of individuals with undisputedly shared religious beliefs, ORTL is a "membership organization, comprised of numerous individuals," none of whom are required to hold any religious beliefs at all. Jones Decl., Attach 3 at 1 (Anderson Declaration); Jones Decl., Attach 4 at 45:16–24 (Anderson Depo.). ORTL's members "join because they agree with ORTL's pro-life principles," Jones Decl., Attach. 3 at 1 (Anderson Declaration), but such agreement is not necessarily based on religious principles.

> iii.    **ORTL's governing structure and the underlying state law do not indicate that ORTL, as a corporation, holds religious beliefs.**

Finally, nothing in ORTL's governing structure and legal status establishes that it holds any beliefs that are, as held by the corporation, religious in nature. Indeed, ORTL is unable to

Page 15 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

identify a single instance outside of this litigation where the organization has referred to its opposition to abortion as a religious belief. Jones Decl., Attach. 4 at 54:21–24 (Anderson Depo.).

In *Hobby Lobby*, the Supreme Court suggested that a corporation's "governing structure" and "the underlying state law" could inform the resolution of intra-corporate disputes regarding religion. *See Hobby Lobby*, 573 U.S. at 718–19 ("[E]ven if RFRA did not exist, the owners of a company might well have a dispute relating to religion. . . . State corporate law provides a ready means for resolving any conflicts by, for example, dictating how a corporation can establish its governing structure. . . . Courts will turn to that structure and the underlying state law in resolving disputes.").

To the extent that those statements in *Hobby Lobby* suggest that the governing structure or legal status of a corporation can indicate a corporation's religious belief for free-exercise purposes, no religious belief is indicated here. As noted above, ORTL is not organized as a religious corporation. Nor has the board of directors that controls ORTL adopted any religious belief. As explained above, neither ORTL's governing documents nor its official position statements establish any corporate purposes or principles that require religious belief or characterize ORTL's positions as religious. The Executive Director's testimony confirms that, in ORTL's own view, employees, officers, and directors can subscribe to ORTL's positions, purposes, principles, and mission without holding any religious beliefs at all. *See* Compl. ¶ 26 ("ORTL's directors, officers, board members, and employees must subscribe to ORTL's mission, beliefs, and policy positions, and members join because of agreement with those."); Jones Decl., Attach 2 at 3 (Article of Incorporation) (directors must express commitment to "the specific written purposes and policies of the corporation"); Jones Decl., Attach. 4 at 42:21–25, 45:16–24 (Anderson Depo.) (directors, officers, board members, and employees must subscribe to ORTL's mission, beliefs, and policy positions, but no "religious beliefs" are required). Thus, even if a public benefit nonprofit corporation's board of directors could officially adopt a religious belief on behalf of the corporation, ORTL's board has not done so.

Page 16 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

In summary, ORTL is an issue-advocacy organization comprised of numerous individuals who need not share any religious beliefs, engaging in political advocacy that ORTL does not regard as religious in nature. While particular individuals' support for ORTL might be motivated by personal religious beliefs, that is not enough to show that ORTL itself can be regarded as holding religious beliefs or as a mere "extension" of its members' shared religious beliefs. ORTL therefore cannot show that it has suffered an impermissible burden on such beliefs for the purposes of the Free Exercise Clause.

> **c.    ORTL has not shown that ORTL itself has a religious belief that covering the specified four types of "abortifacient 'contraceptives'" in its health-benefit plan involves forbidden abortion complicity.**

Even if ORTL could hold religious beliefs under controlling law, it would still need to show that it holds the specific *religious* belief that it claims is burdened. ORTL claims that RHEA's requirements conflict with its belief "that covering abortion and abortifacient 'contraceptives' in its health-benefit plan involves forbidden abortion complicity." Compl. ¶ 57. ORTL specifies that, in its view, "abortifacient 'contraceptives'" include "(a) Plan B (levonorgestrel), (b) Ella (ulipristal acetate), (c) copper IUDs (like ParaGard), and (d) IUDs with progestin." Comp. ¶ 53. But ORTL has not shown that such beliefs, as held by the corporation, are religious in nature.

Nothing in ORTL's governing documents, official position statements, or mission statement expresses any position or belief on when or whether providing health insurance that covers certain contraception or abortion is wrong. Nor has ORTL shown that it has expressed such beliefs outside of this litigation challenging RHEA and the Executive Director's declaration in support of an exemption to that law.

Further, ORTL has not established that its members, employees, officers, or directors share the asserted beliefs. ORTL does not require any of its members, employees, officers, or directors to agree that providing insurance coverage is wrongful if it covers abortion or the four "abortifacient 'contraceptives'" specified in ORTL's Complaint. *See* Jones Decl., Attach. 4 at

Page 17 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
             INJUNCTION
         BM2/jt3/

45:8–12 (Anderson Depo.) (directors, officers, and employees are not required to subscribe to any beliefs other than the mission and policy positions); *id.* at 46:6–8 (no requirement to become a member other than monetary contribution).

Moreover, ORTL's actions do not demonstrate that its asserted beliefs regarding providing comprehensive health insurance, if held by the corporation, are held as a matter of religious belief, "with the strength of traditional religious convictions." *See Ward*, 989 F.2d at 1018. ORTL argues that RHEA requires it to engage in morally and religiously forbidden conduct by providing health benefit plans that cover abortion and certain contraception. Nonetheless, ORTL has provided employee health insurance through Providence Health Plans since at least 2015. Compl. ¶ 40. ORTL has continued to knowingly provide such coverage for more than four years before filing this lawsuit. *See* Jones Decl., Attach. 4 at 62:3–17, 63:19–23 (Anderson Depo.); Jones Decl., Attach. 3 (Anderson Declaration) at 6 (ORTL learned, before April 29, 2019, that its insurance included coverage for contraceptives that can act as abortifacients). Although ORTL asserts that its board members, officers, employes, and members "would be displeased if ORTL violated [its] beliefs and would likely dissociate from ORTL were it to do so," Compl. ¶ 35, ORTL has not shown any evidence that anyone has dissociated from ORTL as a result of its continued provision of the health benefit plan at issue.

In summary, ORTL's statements, policies, and actions do not demonstrate that ORTL itself holds a religious belief that it is wrong to provide insurance plans that cover the types of "abortifacient 'contraceptives'" specified in the Complaint, or that cover abortion in general. Nor has ORTL shown that the individuals who make up the corporation hold that belief as a religious matter. ORTL has not shown that RHEA, as applied to ORTL, burdens the free exercise of religion.

### 2.    RHEA Survives Rational Basis Review.

Even if a law burdens religious exercise, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on

Page 18 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quoting *United States v. Lee,* 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in judgment)). Because the law is neutral toward religion and generally applicable, it is subject to rational basis review. The State's interest to "ensure[] that Oregonians have access to comprehensive reproductive health care regardless of their income … or insurance coverage"[3] is a legitimate state objective with a rational relationship to the challenged requirements.

### a.    Under *Employment Division v. Smith*, RHEA is subject to rational basis review.

If the law "at issue [is] neutral and generally applicable," a court reviews the law "for a rational basis." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015).

### i.    RHEA is generally applicable.

"Broadly speaking, there are two ways a law is not generally applicable." *Tingley v. Ferguson*, 47 F.4th 1055, 1087–88 (9th Cir. 2022) (citing *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021)). A law is not generally applicable if it "'prohibits religious conduct while permitting secular conduct' that also works against the government's interest in enacting the law." *Id.* at 1088 (citing *Fulton*, 141 S. Ct. at 1878). A law is also not generally applicable "if there is a 'formal mechanism for granting exceptions' that 'invite[s] the government to consider the particular reasons for a person's conduct.'" *Id.* (citing *Fulton*, 141 S. Ct. at 1879). Neither applies here.

### (A)    Underinclusivity

"A law is not generally applicable if its prohibitions substantially underinclude *non-religiously motivated* conduct that might endanger the same governmental interest that the law is

---

[3] *See* Jones Decl., Attach. 9 at 5 (Oregon Health Authority, House Bill 3391 Reproductive Health Equity Act: Report to the Legislature (Sept. 2018)).

Page 19 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
           INJUNCTION
           BM2/jt3/

designed to protect." *Stormans*, 794 F.3d at 1079 (emphasis added). Here, none of the exceptions favor secular reasons for noncompliance or disfavor religiously motivated ones.

To the contrary: ORTL concedes that each of the exceptions in the law are specifically designed to accommodate religious objections to abortion coverage:

- The law exempts statutorily defined "religious employers" from providing coverage for contraceptives or abortion "that are contrary to [their] religious tenets …." ORS 743A.067(9); ORS 743A.067(1)(e) (incorporating the ORS 743A.066(4) definition of religious employer)).

- As ORTL alleges, the legacy exemption (ORS 743A.067(7)(e)) was enacted to accommodate Providence Health Plan's faith-based objection to providing coverage for abortion. Compl. ¶¶ 50–51, 81.

- Finally, the federal funds exception (ORS 743A.067(10)) provides an exemption for entities that would qualify for federal protections under "the Weldon Amendment (a federal-funds conscience provision)…." Compl. ¶ 48.

None of these exceptions prohibits religious or religiously motivated conduct while permitting secular activity. By including these three exceptions, the law is more solicitous of religious exercise than a mandate with no exceptions at all.

Those accommodations for religious objections do not make the law underinclusive under the Free Exercise Clause. To show otherwise, ORTL must demonstrate that the law substantially favors "comparable secular conduct." *See Stormans*, 794 F.3d at 1079 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 545 (1993))() ("[I]f a law pursues the government's interest 'only against conduct motivated by religious belief' but fails to include in its prohibitions substantial, comparable secular conduct that would similarly threaten the government's interest, then the law is not generally applicable."); *accord Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 480 (6th Cir. 2020) ("[T]he Free Exercise Clause does not guarantee better treatment for religious actors than for secular ones;

Page 20 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

instead, the Clause 'prohibits government officials from treating religious exercises worse than comparable secular activities[.]'" (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (2020) (Gorsuch, J. concurring)).

ORTL cannot show that the law favors secular objections to providing comprehensive reproductive coverage over religious ones. Thus, the law is one of general applicability unless it provides for individualized exemptions.

### (B)     Individualized Exemptions

A law is not generally applicable "if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing '"a mechanism for individualized exemptions."'" *Fulton*, 141 S. Ct. at 1877 (quoting *Smith*, 494 U.S. at 884). Here, there is no mechanism for individualized exemptions; rather, there are categorical exemptions based on defined criteria.

"'What makes a system of individualized exemptions suspicious is the possibility that certain violations may be condoned when they occur for secular reasons but not when they occur for religious reasons.'" *Stormans*, 794 F.3d at 1082 (quoting with approval *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007)). Thus, when exceptions "are tied to particularized, objective criteria[,]" such "rules do not afford unfettered discretion that could lead to religious discrimination" and thus do not defeat a law's general applicability. *Id.* at 1081–82.

There is no such individualized exemption here. That makes this case different from *Foothill Church v. Watanabe*, where California "concede[d] that the existence of a 'system of individual exemptions' … subject[ed] [the agency director's] decision not to expand the plan exemption framework to the [plaintiff] [c]hurches to strict scrutiny." 623 F. Supp. 3d 1079, 1093 (E.D. Cal. 2022). Accordingly, the law is still one of general applicability.

Page 21 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
           INJUNCTION
           BM2/jt3/

### ii.    RHEA is neutral.

"[I]f the object of a law is to infringe upon or restrict practices *because of* their religious motivation, the law is not neutral...." *Stormans*, 794 F.3d at 1076 (emphasis added). ORTL argues that because the law is aimed to require providing that coverage in all employer plans, and it and other employers object to providing certain contraceptive coverage for religious reasons, the law's purpose itself unlawfully targets religious conduct. Not so: "The Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct." *Stormans*, 794 F.3d at 1077. Here, the aim of the law is to provide access to reproductive health care. Thus, this is not a case where the law by its "own terms target[s] religious exercise" and the legislative history "discloses animosity" toward a religion. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 542 (1993).

ORTL also argues that the law's definition of "religious employers," which "essentially have to be churches to qualify" for the exemption, evinces the legislature's "hostility" towards other religious organizations. ECF 11 at 28 (PI Mot. at 23). The Ninth Circuit has rejected such an argument. *See Rollins v. Dignity Health*, 830 F.3d 900, 910–912 (9th Cir. 2016), *rev'd sub nom. on other grounds*[4] *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468 (2017) (holding there is "no … conflict" between a statutory exemption limited to churches and "the Religion Clauses of the First Amendment"). *Rollins* explained that "[n]umerous federal statutes have long drawn the distinction between churches and other religious organizations." *Id.* at 911. "[T]hese statutes are constitutional because they distinguish between churches and other religious organizations based on 'neutral, objective organizational criteria.'" *Rollins v. Dignity Health*, 830 F.3d at 911  (quoting *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151,

---

[4] The Supreme Court ultimately reversed the Ninth Circuit's *Rollins* decision on statutory (not constitutional) grounds (*see Advoc. Health Care Network*, 581 U.S. at 483–84), but a circuit precedent reversed on other grounds remains strong persuasive authority. *See Oregon Firearms Fed'n v. Kotek*, No. 2:22-CV-01815-IM, 2023 WL 4541027, at *50 (D. Or. July 14, 2023) (citing three Ninth Circuit cases).

Page 22 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
            INJUNCTION
         BM2/jt3/

1199–1201 (10th Cir. 2015), *vacated on other grounds*, *Zubik v. Burwell*, 136 S.Ct. 1557 (2016)). There is thus no reason to infer hostility to other religious organizations from such statutes. One such statute *Rollins* cited with approval—26 U.S.C. § 6033(a)(3)(A)(i)—is the very same one that RHEA incorporates. *See* ORS 743A.067(1)(e) (incorporating the ORS 743A.066(4) definition of religious employer, which in turn incorporates § 6033(a)(3)(A)(i))). In holding that "distinguishing between religious institutions based on organizational form" is constitutionally permissible, *Rollins*, 830 F.3d at 912, the Ninth Circuit expressly rejected Judge O'Scallion's concurrence in *Spencer v. World Vision, Inc.*, upon which ORTL relies. *Id.* at 911; *see also* ECF 11 at 28 (citing *Spencer v. World Vision, Inc.*, 633 F.3d 723, 728–29 (9th Cir. 2011) (O'Scannlain, Cir. J., concurring)).

### b.     RHEA is rationally related to the State's interest in facilitating reproductive freedom.

Because the law is neutral and generally applicable, the Court must determine whether the law is "rationally related to a legitimate governmental purpose." *Stormans, Inc.*, 794 F.3d at 1084.  Under rational basis review, the State's enactments are "entitled to a 'strong presumption of validity,'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022) (internal citation omitted), and ORTL has "the burden to negat[e] every conceivable basis which might support" the law, *Stormans, Inc.*, 794 F.3d at 1084 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

The State's interest to "ensure[] that Oregonians have access to comprehensive reproductive health care regardless of their income … or insurance coverage…."[5] That is a legitimate state interest. *See Stormans, Inc.*, 794 F.3d at 1084 ("safe and timely access" to medication, including Plan B, a rational basis); *cf. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014) (assuming without deciding "that the interest in guaranteeing cost-free access to

---

[5] *See* Jones Decl., Attach. 9 at 5 (Oregon Health Authority, House Bill 3391 Reproductive Health Equity Act: Report to the Legislature (Sept. 2018)).

Page 23 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
BM2/jt3/

the four challenged contraceptive methods is compelling within the meaning of RFRA"). The law is valid so long as it "is rationally related to that interest." *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023).

Here, the law serves a government interest by mandating health insurers provide cost-free access to the full spectrum of contraceptives—coverage that the employees and dependents covered by ORTL's plan currently have. Because RHEA is "neutral and generally applicable," that rational basis is sufficient to comply with the Free Exercise Clause.

## C.    The Balance of the Equities Disfavors a Preliminary Injunction

### 1.    ORTL has not shown irreparable harm.

The "standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction …." *See Winter*, 555 U.S. at 22 (emphasis original). ORTL argues it has shown irreparable harm because the law infringes its constitutional rights. Compl. ¶ 54. But an injury based on a plaintiff's loss of constitutional rights requires the plaintiff to establish it is likely to succeed on its constitutional claim. *See Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997, 1006 (N.D. Cal. 2014) ("'serious questions' do not translate to a violation severe enough to trigger a presumption of irreparable harm"). For the reasons explained in Section IV.B, above, ORTL has not made that showing. Because ORTL does not show that irreparable harm is likely (here, by showing their constitutional rights would be violated in the absence of an injunction), the Court cannot issue a preliminary injunction.

### 2.    The balance of equities disfavors an injunction.

To prevail on a preliminary injunction, a plaintiff must also show "the balance of equities tips in [its] favor; and … an injunction is in the public interest." *Short*, 893 F.3d at 675. Because state officials are parties, these factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of the equities and the public interest disfavor an injunction.

Page 24 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

"[A] state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 92 (9th Cir. 2009) (quoting *Coal. for Econ. Equity v. Wilson,* 122 F.3d 718, 719 (9th Cir. 1997)); *accord Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, Circuit Justice). An injunction would impede the State's policy here, because a shift in ORTL's health plan would cause employees and dependents enrolled in the ORTL plan to lose contraception coverage for the duration of the litigation. *See* Jones Decl., Attach. 4 (Anderson Depo.) at 41:23–42:1 (noting that dependents can enroll in ORTL's plan).

## V.  CONCLUSION

ORTL's motion for a preliminary injunction is untimely and it is unlikely to succeed on the merits of its free exercise claim. Its motion should therefore be denied.

DATED November  6 , 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
Senior Assistant Attorney General
ALEX C. JONES #213898
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.state.or.us
Alex.C.Jones@doj.state.or.us
Of Attorneys for Defendant

Page 25 -  DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR A PRELIMINARY
        INJUNCTION
BM2/jt3/