Shawn Lindsay, OSB #020695
JURISLAW, LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: 503.968.1475
shawn@jurislawyer.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **OREGON RIGHT TO LIFE**,<br><br>                                         Plaintiff,<br><br>v.<br><br>**ANDREW R. STOLFI**, in his official capacities as Department of Consumer and Business Services Director and Oregon Insurance Commissioner,<br><br>                                         Defendant. | Case No.: **6:23-cv-1282-MK**<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br><br><br>Request for Oral Argument |

## Argument[1]

The Director's Dismiss Motion should be denied because (**I**) in this *as-applied* challenge he makes a *facial-challenge* argument, conceding the as-applied challenge; (**II**) the Mandate is neither generally applicable nor neutral; and (**III**) the Mandate is unconstitutional as applied.

Note that the centerpiece of the Director's PI Response (ECF #27) is gone, i.e., his erroneous notion that ORTL has no free-exercise burden because its religious beliefs aren't religious. PI Resp. Part IV.B.1. ORTL's beliefs and burden must be deemed true. Dismiss Mot. 2.

---

[1] Defendant Stolfi ("**Director**") moved to dismiss. (ECF #29) ("**Dismiss Motion**"). Oregon Right to Life ("**ORTL**") responds in opposition, retaining abbreviations from its preliminary-injunction motion (ECF #11) ("**PI Motion**") and reply ("**PI Reply**"), e.g., Bill § 2 ("**Mandate**").

**Page 1 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**

# I.
## The Director concedes the as-applied challenge.

ORTL challenges the Mandate *as applied* to ORTL. Ver. Compl. ¶ 1 (ECF #1). But the

Director makes a *facial-challenge* argument: "Given that RHEA is neutral and generally applica-

ble, it is subject to rational basis review, which the law easily satisfies" based on the cover-all

interest. Dismiss Mot. 3. In other words, he responds to ORTL's claim that the Mandate is un-

constitutional as applied to it by saying, "But it's constitutional facially!" So he "essentially con-

cedes" the as-applied issue. *Fellowship of Christian Athletes v. San Jose Unified School District*

*Board of Education*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc) ("***FCA***") ("[Defendant] essen-

tially concedes . . . it cannot meet this standard as it . . . offered no arguments to the contrary").

The Mandate's *facial* constitutionality was *not* the issue the Director was required to address

in this *as-applied* challenge, nor are such "broadly formulated interests" permissible in the as-

applied context, as ORTL clearly established, PI Mot. 29 (emphasis in original):

> As applied to ORTL, the Mandate fails "the most rigorous of scrutiny," [*Church of the*]
> *Lukumi* [*Babalu Aye v. Hialeah*], 508 U.S. [520,] 546 [(1993)], which inquires whether
> *denying ORTL an exemption*[2] "advances 'interests of the highest order' and is narrowly
> tailored to achieve those interests," *Fulton*, 141 S.Ct. at 1881 (citation omitted). If "the
> government can achieve its interests in a manner that does not burden religion, it must do
> so." *Id.*; *accord* [*Burwell v.*] *Hobby Lobby* [*Stores*], 573 U.S. [682,] 728 (2014). "Rather
> than rely on 'broadly formulated interests,' courts must 'scrutinize[ ] the asserted harm of
> granting specific exemptions to particular religious claimants.'" *Fulton* [*v. City of Phila-*
> *delphia*], 141 S.Ct. 1868 [(2021)] (citation omitted)).

ORTL also established this as-applied focus in the Complaint, Ver. Compl. ¶ 88:

> The focus is on whether denying ORTL an exemption is narrowly tailored to a compelling
> interest. *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418,
> 430-432 (2006); *Fulton*, 141 S.Ct. at 1881 ("The question . . . is not whether the [defen-

---

[2] "The granting of an exemption from a generally applicable law is tantamount to a holding
that a law is unconstitutional as applied to a particular set of facts [citation omitted], and cases
holding generally applicable laws unconstitutional as applied are unremarkable." *Fulton*, 141
S.Ct. at 1916-17 (Alito, J., joined by Thomas and Gorsuch, JJ., concurring in judgment).

**Page 2 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**

dant] has a compelling interest in enforcing its [challenged] policies generally, but whether it has such an interest in denying an exception to [plaintiff].”). “Rather than rely on 'broadly formulated interests,' courts must 'scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants.'” *Id.* (citation omitted)). So the cover-all interest asserted for the Mandate doesn't apply here.

Despite those clear, controlling precedents, the Director does the *opposite* of what was required. He erroneously argues “a[n] . . . interest in enforcing [the Mandate] generally” and does *not* argue “an interest in denying an exemption to [ORTL].” *Fulton*, 141 S.Ct. at 1881. Accordingly, “[he] essentially concedes . . . [he] cannot meet this [as-applied] standard as [he] . . . offered no arguments to the contrary.” *FCA*, 82 F.4th at 694. Under either rational-basis or strict-scrutiny analysis, he was required to make an as-applied argument. He did not, could not.[3] The Dismiss Motion should be denied on that basis alone.

## II.
### The Mandate is neither generally applicable nor neutral

The Director's core dismissal argument is that the Mandate *is generally applicable and neutral*, so rational-basis scrutiny applies and the cover-all interest justifies the Mandate facially. Dismiss Mot. 2-3. Instead of developing that general-and-neutral argument and answering ORTL's contrary arguments in his Dismiss Motion, the Director ignores contrary arguments and relies on his PI Response (ECF #27), saying ORTL's claim “fails as a matter of law for the reasons argued in Section IV.B.2” of his PI Response. Dismiss Mot. 2.

Setting aside for now the Director's erroneous facial argument in an as-applied case, *supra*

---

[3] *Had* the Director argued the cover-all interest in an as-applied defense, that would fail because that interest doesn't address why ORTL should not be exempted. Rather, he would have needed to argue a brook-no-departures interest as was attempted in *Fulton*, 141 S. Ct. at 1882, but *Fulton* rejected that because exceptions undercut that interest, *id. See* PI Mot. 33. As ORTL established in the PI Motion, “The same applies to ORTL if Oregon asserts such an interest, e.g., its grandfathering exemption, federal-funds exemption mechanism, and other gaps undercut any such brook-no-departures interest . . . .” PI Mot. 33.

Part I, his *general-and-neutral argument* fails for the reasons that ORTL established in ORTL's PI Motion (ECF #11), *id.* at Part I.A-B, and in its PI Reply, *id.* at Introduction (C) and Part I.A-B. ORTL primarily relies on the arguments in those briefs, noting key points next.

Regarding whether the Mandate is *generally applicable*, the Director ignores ORTL's showing that *the* overarching general-applicability test is whether a law *is* "of general applicability," *Smith*, 494 U.S. at 879, as a "general law," *id.* at 879, 880 n.5, "generally applicable," *id.* at 880-82, 884-86 & n.3, "across-the-board," *id.* at 884, to *all* to whom asserted interests apply. PI Mot. 16; PI Reply 24-16. Laws are *non*-general if they are underinclusive relative to asserted interests. PI Mot. 16 (citations omitted). As that is *the* generality test, two subsidiary tests mentioned in *Fulton*, 141 S.Ct. at 1877, are non-exclusive. PI Mot. 16-19; PI Reply 24-26. The Director needed to refute that analysis. But he essentially concedes it by *ignoring* it, arguing as if *Fulton*'s tests were exclusive. PI Resp. 1, 19-21. So that overarching *Smith* test controls.

Given *Smith*'s uncontested overarching test, the Mandate is non-general since it is under-inclusive under that test in four ways—(i) the grandfathering provision, (ii) the religious-employer exemption, (iii) the formal exemption mechanism to protect federal funds, and (iv) the exclusion of certain types of health plans. PI Mot. 24-28; PI Reply 26-28. The Mandate is also non-general under *Fulton*'s tests. PI Mot. Part I.B; PI Reply Part I.B.

Ignoring ORTL's arguments, and thus failing to refute them, the Director makes two erroneous general-applicability arguments under *Fulton*'s two non-exclusive tests, i.e., the Mandate has no (**1**) comparable-secular-grounds exemption or (**2**) individualized-exemption mechanism. Dismiss Mot. 3. Both err.

First, regarding the notion that there are no exemptions on *secular* grounds that comparably affect the cover-all interest, the Director ignores that ORTL has identified two of those: (**A**) the

**Page 4 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**

grandfathering provision and (**B**) the preserve-federal-funds, individual-exemption mechanism.

Regarding (**A**), the grandfathering provision makes the Mandate not generally applicable under both *Smith*'s overarching general-applicability test and *Fulton*'s comparable-exemption analysis. PI Mot. 25; PI Reply 27. The grandfathering provision blew a giant hole in the Mandate's general applicability, making it underinclusive under *Smith*'s overarching test for not being generally applicable to all to whom the cover-all interest applies. Regarding the comparable-exemption analysis, the Director wrongly claimed that ORTL conceded that the grandfathering provision is a religious accommodation,[4] when ORTL actually said it is based solely on the *secular* basis of 2017 coverage. PI Mot. 2-3, 9-10, 12, 25; PI Reply 22-23, 27. That grandfathering exemption makes the Mandate non-general under *Fulton*'s comparable-exemption analysis since ORTL has no exemption for religious beliefs but Providence Health Plans (and another) were not required to provide abortion coverage based on the secular ground of 2017 coverage, with both comparably affecting the cover-all interest. PI Mot. 25; PI Reply 27.

Regarding (**B**), the preserve-federal-funds, formal-exemption mechanism is based solely on the *secular* ground of preserving federal funds, which makes the Mandate not generally applicable under both *Smith*'s overarching generality test and *Fulton*'s comparable-exemption analysis, with the cover-all interest comparably affected. PI Mot. 26-27; PI Reply 27-28. In other words, the mechanism authorizes granting an entity an exemption if federal funds are at risk (a *secular* reason), but ORTL can't get one for religious reasons, with both exemptions comparably affecting the cover-all interest. PI Mot. 26-27; PI Reply 27.

Second, regarding the Director's claim that there is no individualized-exemption

---

[4] Even a religious accommodation, though constitutionally permissible, makes a law non-general under *Smith*'s overarching test and the comparable-exemption analysis so that strict scrutiny applies. PI Mot. 25-26. The Director fails to answer this arguments, essentially conceding it.

**Page 5 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**

mechanism, Dismiss Mot. 3, the preserve-federal-funds, individual-exemption mechanism *is*
such a mechanism, and the mere existence of that mechanism makes the whole Mandate non-
general. PI Mot. 26-27; PI Reply 27-28. In his PI Response, the Director attempted to avoid the
existence of this formal, individualized-exemption mechanism by simple denial based on abro-
gated authority while ignoring now-controlling authority. PI Resp. 21. But ORTL refuted that
argument. PI Reply 27-28. The preserve-federal-funds, individual-exemption mechanism clearly
authorizes consideration of particular reasons for granting an exemption, and it authorizes doing
so to the minimum degree possible with no guidelines, though such "unfettered discretion" is no
longer required to make the Mandate non-general. PI Reply 27-28. Under *Fulton*'s particular-
reasons analysis, PI Mot. 16-17, this mechanism makes the Mandate non-general.

For these and other reasons established in ORTL's preliminary-injunction briefing, the Man-
date is not generally applicable, so strict scrutiny applies. As in *Fulton*, that analysis is "straight-
forward." 141 S. Ct. at 1877.

Strict scrutiny also applies because the Mandate is *non-neutral*. PI Mot. 21-24; PI Reply 29-
30. The Director doesn't address ORTL's specific, recited evidence of non-neutrality and hostil-
ity toward religious beliefs in the Mandate itself and its enactment, but instead says it is neutral
because (i) of the cover-all interest, (ii) it doesn't "target" religious free exercise, and (iii) the
legislative history lacks "animosity." Dismiss Mot. 2. But of course ORTL showed just such evi-
dence, PI Mot. 21-24; PI Reply 29-30, and the Director's mere *denial* of such is no substitute for
dealing with ORTL's substantive arguments. By ignoring that evidence he essentially concedes
again that he lacks arguments against it. Regarding "targeting," in his PI Response, the Director
likewise cited a "targeting" requirement, based on *Stormans v. Wiesman*, 794 F.3d 1064, 1076
(9th Cir. 2015). PI Resp. 22-23. But ORTL refuted "targeting" as a requirement in its PI Reply:

**Page 6 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**

While ORTL provided evidence of such targeting, *FCA* expressly held that "*Fulton* and *Tandon* [*v. Newsom*, 141 S.Ct. 1294 (2021) (per curiam),] clarify that targeting is not required for a government policy to violate the Free Exercise Clause. Instead, favoring comparable secular activity is sufficient." 82 F.4th at 686. Non-neutrality may be demonstrated by "'treat[ing] . . . comparable secular activity more favorably than religious exercise'" or by actions "'hostile to . . . religious beliefs,'" even by "'subtle departures from neutrality.'" *Id.* (citations omitted). Neither of those non-neutrality tests requires targeting, so once again *Stormans* is abrogated and the Director's reliance on pre-*Fulton*, pre-*Tandon*, pre-*FCA* precedent dooms his neutrality and "delay" arguments. By relying on the wrong neutrality analysis, the Director fails to address most of ORTL's arguments, such as the fact that multiple entities sought a broad conscience exemption in testimony opposing the bill, but no such exemption was enacted. Instead, a secular-based grandfathering provision protected PHP and a narrow "religious employer" exemption protected some religious entities. That was at a minimum a subtle departure from neutrality, though not so very subtle. And the Director ignores that hostility is also evident because (i) religious employers "may" get ideologically compatible insurance and (ii) the preserve-federal funds mechanism expressly provides for as little relief as possible. PI Mot. 24.

PI Reply. 29. So the Mandate also is subject to strict scrutiny for being non-neutral.

### III.
### The Mandate is unconstitutional as applied.

In addition to the Director failing to make an as-applied argument (Part I) and the Mandate not being general and neutral (Part II), the Dismiss Motion should also be denied because the Mandate is unconstitutional as applied to ORTL. PI Mot. Part I.C; PI Reply Part I.C.

As in *FCA*, "[the Director] essentially concedes . . . it cannot meet this [strict-scrutiny] standard as it . . . offered no arguments to the contrary" 82 F.4th at 694. So if strict scrutiny applies, as it does, the Mandate is unconstitutional as applied to ORTL and the Dismiss Motion should be denied on that basis.

As established in Part I, even if rational-basis scrutiny were applicable, the Director has made no as-applied challenge argument under that scrutiny, only an irrelevant facial-challenge argument. He has shown no reason why his Dismiss Motion should be granted under rational-basis scrutiny. Accordingly, his Motion should be denied for failure to make a relevant argument.

# Conclusion

For the foregoing reasons the Director's Dismiss Motion should be denied.

Dated: December 18, 2023

Respectfully submitted,

/s/ Shawn Lindsay

James Bopp, Jr., IN Bar #2838-84*
 jboppjr@aol.com

Richard E. Coleson, IN Bar #11527-70*
 rcoleson@bopplaw.com

Joseph D. Maughon, VA Bar #87799*
 jmaughon@bopplaw.com

THE BOPP LAW FIRM, PC
The National Building
1 South Sixth Street
Terre Haute, IN 47807-3510
812.232.2434 telephone
812.235.3685 facsimile
*admitted pro hac vice
*Counsel for Plaintiff*

Shawn Lindsay, OSB #020695
JURISLAW, LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: 503.968.1475
shawn@jurislawyer.com
*Attorney for Plaintiff*

**Page 8 – PL.'S RESP. TO DEF.'S MOT. TO DISMISS**