IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

OREGON RIGHT TO LIFE,

               Plaintiff,

    v.

ANDREW R. STOLFI, in his official
capacities as Department of Consumer
and Business Services Director and
Oregon Insurance Commissioner,

               Defendant.

_____

Civ. No. 6:23-cv-01282-MK

**OPINION & ORDER**

AIKEN, District Judge.

      This case comes before the Court on Plaintiff's Motion to Consolidate, ECF No. 13, and Plaintiff's Motion for Preliminary Injunction. ECF No. 11. For the reasons set forth below, the Motion to Consolidate is DENIED and the Motion for Preliminary Injunction is DENIED.

## LEGAL STANDARDS

      A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the

balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).

## BACKGROUND

### I.    Reproductive Health Equity Act

In 2017, the Oregon legislature enacted the Reproductive Health Equity Act ("RHEA"), codified in relevant part in ORS 743A.067. As relevant to the present motion, the RHEA provides: "A health benefit plan in this state must provide coverage for all of the following services, drugs, devices, products and procedures: . .

. (g) Abortion. . . . (j) Any contraceptive drug, device or product approved by the United States Food and Drug Administration[.]"  ORS 743A.067(2).

The RHEA also provides that "[a] health benefit plan may not impose on an enrollee a deductible, coinsurance, copayment or any other cost-sharing requirement on the coverage required by this section."  ORS 743A.067(3).  In addition, "[e]xcept as authorized under this section, a health benefit plan may not impose any restrictions or delays on the coverage required by this section."  ORS 743A.067(4).  "A health benefit plan may not infringe upon an enrollee's choice of contraceptive drug, device or product and may not require prior authorization, step therapy or other utilization review techniques for medically appropriate covered contraceptive drugs, devices or other products approved by the United States Food and Drug Administration."  ORS 743A.067(2)(j)(D).

There are certain exceptions to the insurance coverage requirement under the RHEA.  First, "[t]his section does not require a health plan to cover: . . . Abortion if the insurer offering the health plan: (A) Has a certificate of authority to transact insurance in this state issued by the Department of Consumer and Business Services; and (B) Excluded coverage for abortion in all of its individual, small employer and large employer group plans during the 2017 plan year."  ORS 743A.067(7)(e).  This is known as the "legacy clause" or "grandfather clause."  Providence Health Plans is "the only known entity that fits that exemption."  Compl. ¶ 41.

Next, the RHEA provides that "[a]n insurer may offer to a religious employer a health benefit plan that does not include coverage for contraceptives or abortion

procedures that are contrary to the religious employer's religious tenets only if the insurer notifies in writing all employees who may be enrolled in the health benefit plan of the contraceptives and procedures the employer refuses to cover for religious reasons."  ORS 743A.067(9).  "Religious employer" is defined as an employer "(a) Whose purpose is the inculcation of religious values; (b) That primarily employs persons who share the religious tenets of the employer; (c) That primarily serves persons who share the religious tenets of the employer; and (d) That is a nonprofit section 6033(a)(3)(A)(i) ["churches, their integrated auxiliaries, and conventions or associations of churches,"] or (iii) ["the exclusively religious activities of any religious order,"] of the Internal Revenue Code."  ORS 743A.066(4); ORS 743A.067(1)(e).  This is the "religious employer exception."

Finally, the RHEA includes a "federal funding exception."  This exception provides that "[i]f the Department of Consumer and Business Services concludes that enforcement of this section may adversely affect the allocation of federal funds to the state, the department may grant an exemption to the requirements but only to the minimum extent necessary to ensure the continued receipt of federal funds."  ORS 743A.067(10).

The Director of the Oregon Department of Consumer and Business Services ("DCBS") is empowered to enforce the RHEA's insurance coverage requirements through civil penalties.  ORS 731.988.  Defendant Andrew Stolfi is the current Director of DCBS.  Compl. ¶ 16.

## II.    Oregon Right to Life

Plaintiff Oregon Right to Life ("ORTL") "is an Oregon non-stock corporation with its principal place of business in Keizer, Oregon." Compl. ¶ 14. Plaintiff "is organized and operates as a nonprofit membership organization." *Id.* Plaintiff "was formed in 1970 to proclaim and advocate for the inherent dignity of human life and to promote respect and protection for human life regardless or race, sex, age, or stage of development." *Id.*

Plaintiff has over 25,000 members. Compl. ¶ 14. "Members join due to agreement with ORTL's prolife principles and provide at least modest financial support." *Id.* at ¶ 21. Plaintiff is controlled by a Board of Directors, two of whom are elected by the membership of the organization. *Id.* at ¶¶ 20-21.

Plaintiff currently has ten full time employees. Compl. ¶ 25. Of those employees, eight are currently enrolled in a health plan provided by Plaintiff. *Id.* at ¶ 39. Plaintiff has provided health coverage through Providence Health Plans since 2015 and that plan excludes coverage for abortions. *Id.* at ¶ 40. Providence Health Plan is covered by the "legacy clause" to the RHEA and so is not required to provide abortion coverage under the RHEA. Jones Decl. Ex. 1. ECF No. 28. Plaintiff's present Providence Health Plan "plan excludes abortion coverage unless there is a severe threat to the mother, or if the life of the fetus cannot be sustained," but does not exclude contraceptive coverage. Compl. ¶ 42 (internal quotation marks omitted).

Plaintiff maintains that life begins at fertilization. Compl. ¶ 31. Plaintiff takes no position on forms of contraception that prevent the combination of egg and sperm

cells but is opposed to contraception that prevents implantation of a fertilized egg and views such forms of contraception as abortifacients. *Id.* at ¶¶ 31-32. Although Plaintiff's health plan is not required to provide coverage for abortions under the legacy clause of the RHEA, "[t]hat excemption doesn't address *contraceptive* coverage." *Id.* at ¶ 41 (emphasis in original). In addition, Plaintiff objects the Providence Health Plans provides coverage for abortions "beyond imminent danger to the mother's life." *Id.* at ¶ 44.

Plaintiff asserts that Providence Health Plans has become unsuitable for a number of reasons, only some of which are related to abortion and contraceptive coverage. Compl. ¶¶ 43-44. Plaintiff and its employees "want a traditional health benefit plan" and so alternatives such as "faith-based medical-cost-sharing groups and direct primary-care alternatives" are "unsuitable." *Id.* at ¶ 45.

Plaintiff has not sought an exception as a "religious employer" because it does not believe that it would qualify under the statutory definition. Compl. ¶ 46. Plaintiff has sought an exemption under the federal funding exception and "did so under the Weldon Amendment (a federal-funds conscience provision), based on a now-defunct Trump administration interpretation of its provisions." *Id.* at ¶ 48. Plaintiff was not successful in seeking a federal funding exception. *Id.*

## DISCUSSION

In their Complaint, Plaintiff brings an as-applied challenge to the RHEA, ORS 743A.067(2) under the Free Exercise Clause of the First Amendment. Compl. ¶ 1. Plaintiff objects on religious grounds to the requirement that it provide insurance

coverage in its health-benefit plan for "abortion (except to save the mother's life)" and "contraceptives that act as abortifacients." *Id.* at ¶ 8. Plaintiff does not qualify as a "religious employer" under the RHEA because "its purpose is prolife advocacy, not inculcating religious values, and it doesn't primarily serve persons sharing its religious tenets." *Id.* However, Plaintiff asserts that its objections to abortion and contraception are religious in nature and seeks to be treated as a religious employer for purposes of the RHEA.

Defendant opposes the injunction on the basis that (1) Plaintiff's opposition to abortion and contraception is a not a religious belief and (2) that the RHEA is a neutral and generally applicable law that passes rational basis review.

## I.    Consolidation

As a preliminary matter, the Court must address Plaintiff's motion to consolidate consideration of its motion for preliminary injunction with a decision on the merits of the case. The Federal Rules of Civil Procedure provide that:

> Before or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

Fed. R. Civ. P. 65(a)(2).

"The decision about whether to consolidate is discretionary, as the rule simply states that the court 'may' advance and consolidate a trial on the merits." *Human Life of Wash., Inc. v. Brumsickle*, Case No. C08-0590-JCC, 2008 WL 11506796, at *2 (W.D. Wash. May 15, 2008).

Here, the Court declines to consolidate its determination on the motion for preliminary injunction with a decision on the merits. Plaintiff's motion to consolidate is DENIED.

## II.     Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

As noted, Plaintiff brings an as-applied challenge to the RHEA mandate as violative of Plaintiff's free exercise rights. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend 1. To avoid strict scrutiny, laws that burden religious exercise must be both neutral and generally applicable. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). Nor may the government "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 638 (2018).

### A.  Religious Beliefs

Plaintiff alleges in the Complaint that its opposition to the RHEA mandate is based on its "Judeo-Christian religious beliefs" and Biblical commands.  Compl. ¶ 34. Defendant asserts that Plaintiff's opposition to abortion is not a religious belief.

It is well-established that courts do not determine truth or falsity in matters of faith, but courts are still called upon to "determined as a threshold matter whether [a plaintiff's] beliefs are within the ambit of the First Amendment." *United States v. Ward*, 989 F.2d 1015, 1017 (9th Cir. 1992).  To fall within the bounds of the Free Exercise Clause, a plaintiff's claims "'must be rooted in religious belief.'" *Id.* (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)); *see also Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 713 (1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion.").  In making that determination, "the task is to decide whether the beliefs professed are sincerely held and whether they are, in [the plaintiff's] own scheme of things, religious." *Ward*, 989 F.2d at 1018 (internal quotation marks and citations omitted, alterations normalized).  Religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protections." *Thomas*, 450 U.S. at 714.  However, a "purely secular philosophical concern" is not protected by the Free Exercise Clause.  *Ward*, 989 F.2d at 1018 (internal quotation marks and citation omitted).  "Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty

precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Yoder*, 406 U.S. at 215-16.

Here, as noted, Plaintiff asserts that the RHEA mandate requiring health benefit plans to cover abortion and certain forms of contraception violates its religious beliefs. While the Court does not weigh the truth or falsity of those beliefs, it must determine first whether the beliefs are sincerely held by Plaintiff and whether they are, in fact, religious. Defendant challenges both assertions.

Plaintiff's articles of incorporation provide that its directors, who control the organization, must subscribe to the "specific purposes" of the organization, "as contained in the subparagraphs of paragraph 6.2" and to the following "personal life perspectives":

> a. That the life of all innocent human beings is the first good and fundamental to all other human goods. The right to this life is first and fundamental of all human rights.
>
> b. That the termination of an innocent human life at any stage from fertilization to natural death is never an acceptable or just "solution" to social problems.

Jones Decl. Ex. 2, at 3. ECF No. 28-2.

The purposes of ORTL are set out in Article 6 of the organization's articles of incorporation:

> 6.1 The corporation is organized to engage in lawful activity permitted under Oregon and federal law.
>
> 6.2 Among its purposes are the following:
>
>> 6.2.1 Proclaiming the inherent dignity of human life and promoting respect and protection for human life in all of its stages

regardless of the race, sex, age, development, or level of dependence of that human life;

6.2.2 Advocating and lobbying for the most vulnerable innocent human beings, from the moment of their conception, where their right to life is denied, abridged, or threatened by local, state or federal law;

6.2.3 Opposing abortion, assisted suicide, euthanasia, infanticide, and life-destroying research.

6.3 The purposes of the corporation shall be carried out with integrity and nonviolence, and by means consistent with traditional Judeo-Christian ethics.

Jones Decl. Ex. 2, at 4.

In her deposition, ORTL Executive Director Lois Catherine Anderson testified that directors, officers, board members, and employees were not required to subscribe to any beliefs beyond the organization's mission and policy positions. Jones Decl. Ex. 4, at 13. There are no religious requirements to be an employee, director, officer, or member of ORTL. *Id.* There are no requirements to becoming a member of the organization, other than paying $5 to join. *Id.* at 14.

In her deposition, Director Anderson was asked the following:

Q: Outside of this litigation, when has Oregon Right to Life referred to its opposition to abortion as a religious belief?

A: I don't know.

Jones Decl. Ex. 4, at 22.

These facts distinguish Plaintiff from the corporations that have been found to exercise religion in their own right. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S.

682 (2014), the Supreme Court considered RFRA[1] claims brought by corporate entities.  One of those entities, Conestoga Wood Specialties, was solely owned by the founding family, the Hahns, as a closely held business with members of the family controlling the board of directors and holding all the voting shares of the business. *Id.* at 700-01.  The board adopted an explicitly religious statement holding that it would be a "sin against God to which they would be held accountable" for the company to be involved in the termination of a pregnancy.  *Id.*  The other company involved in the case, Hobby Lobby, was also closely held, with members of the founding family, the Greens, retaining exclusive control of the company and members of the family serving as the corporation's principal officers. *Id.* at 702-03.  Like Conestoga, Hobby Lobby also adopted explicitly religious resolutions, such as a statement of purpose committing them to "[h]onoring the Lord in all [they] do by operating the company in a manner consistent with Biblical principles."  *Id.*  "Each member of the family has signed a pledge to run the business in accordance with the family's religious beliefs and to use the family assets to support Christian ministries."  *Id.*  In a Ninth Circuit case concerning the corporate exercise of religion, the corporation in question was also a closely held family-owned business "whose shareholders and directors are made up entirely of members of the Stormans family" and the religious objection to contraception was shared by all members of the family.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1120 (9th Cir. 2009).

---

[1] Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*

Here, by contrast, Plaintiff is not affiliated with any religious practice or institution and does not have any religious requirement for being an employee or director. The "specific purpose" and "personal life perspectives" that Plaintiff's directors are required to subscribe to is free of any religious elements, requiring only that they subscribe to a belief in the importance of human life and oppose abortion, euthanasia, assisted suicide, and "life-destroying research." As noted, Plaintiff has over 25,000 members, who are not required to subscribe to any religious belief and are responsible for electing two members of Plaintiff's board of directors. Other than a fleeting reference to "Judeo-Christian ethics," there is nothing in the articles of incorporation that would suggest any religious element in Plaintiff's organization.[2]

There are many reasons why an individual or entity might oppose abortion and contraception, which range from deeply held religious conviction to the purely philosophical. Plaintiff asserts in this litigation that its reasons, as an organization, are religious, but that assertion is not fully supported by the record. It is not necessary for the Court, at this early stage of the case, to conclusively resolve whether Plaintiff's beliefs are, in Plaintiff's own scheme of things, religious. But the Court's review of Plaintiff's organizational documents and requirements for membership, employment, and leadership cast doubt on whether Plaintiff's opposition is genuinely

---

[2] Of note, Plaintiff's articles of incorporation state: "The purposes of the corporation shall be carried out with integrity and nonviolence, and by means consistent with traditional Judeo-Christian ethics." Jones Decl. Ex. 2, at 4. This states that the purposes of the corporation shall be "carried out" by means consistent with Judeo-Christian ethics but does not state that the purposes themselves are necessarily derived from Judeo-Christian beliefs or any other religious beliefs. In addition, the reference to Judeo-Christian ethics is contained in paragraph 6.3, while paragraph 4.3 only requires that the directors subscribe to paragraph 6.2, which contains no reference to Judeo-Christian ethics.

religious in nature.  This doubt undermines Plaintiff's showing of likely success on the merits.

Defendant also challenges whether Plaintiff actually holds the beliefs professed in the Complaint.  As noted, a major aspect of Plaintiff's objection the RHEA mandate is the provision of certain forms of contraception.  Plaintiff has maintained a health benefit plan through Providence Health Plans since 2015, years prior to the passage of the RHEA, and now objects that Providence Health Plans is not acceptable to them because it covers challenged forms of contraception.  The fact that Plaintiff maintained benefits through Providence Health Plans prior to the passage of the RHEA, despite its provisions concerning contraception, likewise casts doubt on Plaintiff's claim.

## B.  Rational Basis Review

One of the core disputes in this case is whether the RHEA should be subject to strict scrutiny as a statute that burdens the practice of religion or whether it is entitled to rational basis review as a neutral and generally applicable law.  *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015) (stating that when a law is neutral and generally applicable it is reviewed for a rational basis).

"Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."  *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).  As for general applicability, "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized

exemptions." *Id.* (internal quotation marks and citation omitted, alterations normalized). "A law also lacks general applicability if it prohibits religious conduct while permitting conduct that undermines the government's asserted interests in a similar way." *Id.* at 534. The application of rational basis review in free exercise cases has recently been clarified by the Ninth Circuit, which set forth three factors for courts to consider:

> Distilled, Supreme Court authority sets forth three bedrock requirements of the Free Exercise Clause that the government may not transgress, absent a showing that satisfies strict scrutiny. [1] First, a purportedly neutral "generally applicable" policy may not have a mechanism for individualized exemptions. [2] Second, the government may not treat comparable secular activity more favorably than religious exercise. [3] Third, the government may not act in a manner hostile to religious beliefs or inconsistent with the Free Exercise Clause's bar on even subtle departures from neutrality. The failure to meet any one of these requirements subjects a governmental regulation to review under strict scrutiny.

*Fellowship of Christian Athletes v. San Jose Unified School Dist.*, 82 F.4th 664, 686 (9th Cir. 2023) ("*FCA*") (internal quotation marks and citations omitted, alterations normalized).

Here, the RHEA does not have a mechanism for individualized exemptions. The federal funding exemption is only implicated if the state is threatened with the loss of federal funding and variance is permitted only so far as is required by the federal government. This is not an exception that invites or permits the state to grant individualized exceptions, nor does it invite the state to consider the particular reasons for a person's conduct. On its face, it only permits exceptions to maintain federal funding. This contrasts with the "good cause" standard for exemptions

considered in *Sherbert v. Verner*, 374 U.S. 398 (1963) and discussed in *Fulton* as an example of individualized exemptions that rendered a law not "generally applicable." *Fulton*, 593 U.S. at 534. The "good cause" standard "permitted the government to grant exemptions based on the circumstances underlying each application." *Id.* The discretion conveyed by the provision challenged in *Fulton* itself was even more obvious, as it allowed an exception to be granted in the "sole discretion" of the responsible official. *Id.* at 535. The federal funding exception to the RHEA does no such thing, but only permits exceptions to the degree necessary to ensure that the state remains in compliance with the requirements of federal funding.[3] This does not confer discretion to make individualized determinations.

The RHEA does not treat comparable secular activity more favorably than religious exercise. In *Fulton*, the Supreme Court held that "[a] law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534; *see also Stormans, Inc.*, 794 F.3d at 1079 ("A law is not generally applicable if its prohibitions substantially underinclude non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect."). In the case of the RHEA, there are two health plans that qualified under the "legacy exception" to the statute's mandate. Jones Decl. Ex. 1, at 1. Providence Health Plans, one of the excepted plans, is a "faith-based non-profit health system" that advocated

---

[3] Plaintiff acknowledges as much in its Complaint: "ORTL has not sought an exemption under a good-cause exemption mechanism . . . since Oregon lacks such a good cause exemption authority, making any such ORTL exemption request futile." Compl. ¶ 47.

for "conscience clause for religious-sponsored insurers" prior to the passage of the RHEA. Compl. ¶¶ 50-51. The record before the Court indicates that the purpose of the legacy exception was to accommodate existing restrictions based on religious objections. This is rather the opposite of privileging secular activity that undermines the purpose of the statute.

As to the third factor discussed in *FCA*, the RHEA is not hostile to religious beliefs. The Ninth Circuit has a multi-factor analysis for neutrality focused on (1) whether "the purpose of the law is to restrict practices *because of* the religious motivation of those performing the practice,"; (2) whether law is "neutral on its face,"; (3) whether the "circumstances surrounding the enactment" of the law "undermine its facial neutrality,"; (4) and whether the law "effectively accomplished a 'religious gerrymander' targeting the petitioner's religious exercise." *Tingley v. Ferguson*, 47 F.4th 1055, 1085-88 (9th Cir. 2022). Here, there is nothing in the purposes of the law or on the face of the law that evidences a hostility to religion, nor do the circumstances of the enactment of the law undermine its facial neutrality. The exceptions built into the RHEA are favorable to religious objectors, with one of the three express exceptions made specifically for religious employers. As noted, the legacy exception relieved plans that existed before 2017 from the necessity of complying with the RHEA and the primary beneficiary of that exception, Providence Health Plans, does not cover abortions because of its religious objections. Far from demonstrating hostility to religious beliefs, the structure of the RHEA indicates the legislature's

desire to accommodate religious beliefs without creating a system of individualized exceptions that would render the statute not generally applicable.

In sum, the Court concludes that the RHEA is neutral and generally applicable. As a result, rational basis review will apply. "Under rational basis review, [courts] must uphold the rules if they are rationally related to a legitimate governmental purpose," and a plaintiff has "the burden to negate every conceivable basis which might support the rules." *Stormans, Inc.*, 794 F.3d at 1084 (internal quotation marks and citation omitted, alterations normalized).

Here, the stated purpose the RHEA is to "ensure[ ] that Oregonians have access to comprehensive reproductive heath care regardless of their income, citizenship or immigration status, gender identity, or insurance coverage." Jones Decl. Ex. 9, at 5. The Court has no trouble concluding that this is a legitimate governmental purpose and that the challenged RHEA provisions are rationally related to advancing that interest. The RHEA passes rational review.

The Court concludes that Plaintiff has failed to demonstrate a likelihood of success on the merits of its claims, or serious questions going to the merits of its claims. This *Winter* factor weighs against the issuance of an injunction.

## III.   Irreparable Harm

In order to satisfy the standard for a preliminary injunction, a party must show that "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22 (internal quotation marks and citation omitted). The Ninth Circuit has held that "an alleged constitutional infringement

will often alone constitute irreparable harm," but that, in such cases, the plaintiff must still establish "a sufficient likelihood of success on the merits of its constitutional claims to warrant the grant of a preliminary injunction." *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (internal quotation marks and citation omitted, alterations normalized). Here, the Court has concluded that Plaintiff has not made the required showing of likely success on the merits and so the Court concludes that they have not made a sufficient showing of irreparable harm. This *Winter* factor weighs against the requested injunction.

## IV.    Balance of the Equities and the Public Interest

Under the "balance of the equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the government is a party, these last two factors of the preliminary injunction analysis will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, Plaintiff asserts that it will be harmed if it is required to comply with the requirements of the RHEA and that some of its directors and members might disassociate from it. This argument is undermined by the fact that Plaintiff

maintained a health benefit plan from Providence Health Plans, which included contraceptive coverage, for years prior to the passage of the RHEA and continued to maintain it in the years since the passage of the RHEA.

On the other hand, the Ninth Circuit has held that "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. App'x 89, 92 (9th Cir. 2009) (holding same). The Court concludes that the balance of the equities and the public interest weigh against the requested injunction.

In sum, the Court concludes that all four *Winter* factors weigh against the extraordinary remedy of an injunction and so Plaintiff's motion will be DENIED.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Consolidate, ECF No. 13, is DENIED and Plaintiff's Motion for Preliminary Injunction, ECF No. 11 is DENIED.

It is so ORDERED and DATED this _____30th_____ day of September 2024.


 /s/Ann Aiken_____
ANN AIKEN
United States District Judge