UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

OREGON RIGHT TO LIFE,                          Case No. 6:23-cv-01282-MTK

      Plaintiff,                               **OPINION AND ORDER**

      v.

SEAN O'DAY,

      Defendant.

---

**KASUBHAI,** United States District Judge:

The United States Supreme Court, in recent years, has articulated broad religious protections under the First Amendment for individuals and other entities who hold deep religious beliefs. This case involves a nonprofit's challenge to an Oregon law that exempts some "religious employers" but not Plaintiff.

Plaintiff Oregon Right to Life ("Plaintiff") has one mission: to advocate for pro-life positions based on Judeo-Christian values. This singularly focused nonprofit, by operation of Oregon law, and in particular the religious exemption available to lawfully avoid compliance with this law, would force Plaintiff to purchase health insurance for its employees that would cover abortions and abortifacients—the very things the nonprofit exists to oppose on religious grounds. The Supreme Court, as this Opinion explains, has made clear that a nonprofit in

Plaintiff's position must prevail on its as-applied challenge to the "religious employer" exemption.

Plaintiff filed this action against the Oregon Department of Consumer and Business Services Director and the Oregon Insurance Commissioner ("Defendant")[1] on September 5, 2023, alleging the Reproductive Health Equity Act ("RHEA"), codified in Or. Rev. Stat. ("ORS") §§ 743A.066-067, violates Plaintiff's constitutional rights to free religious exercise. Pl.'s Verified Compl. ("Ver. Compl.")[2] ¶ 1, ECF No. 1. Plaintiff moved for a preliminary injunction to prevent Defendant from denying Plaintiff a religious exemption under RHEA. Pl. Mot. Preliminary Injunction 35, ECF No. 11. The Court denied Plaintiff's Motion and dismissed Plaintiff's claims, concluding that RHEA is a neutral and generally applicable law and that Plaintiff was not likely to show that its opposition to RHEA was genuinely religious. Op. & Order 13-14, 18, ECF No. 51. Plaintiff appealed, and the Ninth Circuit reversed.[3] *Or. Right to Life v. Stolfi*, 158 F.4th 1013, 1024 (9th Cir. 2025). The Ninth Circuit held that Plaintiff has sincere, religious objections to RHEA and remanded with instructions to apply *Cath. Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Rev. Comm'n*, 605 U.S. 238 (2025) to the facts of this case. *Or. Right to Life*, 158 F.4th at 1023-24.

Following remand, Plaintiff maintained its Motion for a Preliminary Injunction (ECF No. 11) and filed a Second Motion to Consolidate (ECF No. 70) in which it sought to consolidate the

---

[1] Sean O'Day currently serves as both the Oregon Department of Consumer and Business Services Director and the Oregon Insurance Commissioner. ECF No. 68. He was automatically substituted as a party for Andrew R. Stolfi who was the Director and Commissioner when Plaintiff filed this lawsuit. ECF No. 68.

[2] A verified complaint has the evidentiary value of an affidavit where it is based on personal knowledge. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).

[3] The undersigned District Judge assumed presiding responsibilities for this case after the Ninth Circuit reversed and remanded the matter to the District Court.

preliminary injunction hearing with a trial on the merits. The Court heard oral argument on the Plaintiff's Motion for a Preliminary Injunction, converted it into a Motion for Summary Judgment by agreement of the parties, granted the motion, and ordered supplemental briefing on the appropriate remedy. ECF No. 86. The Court now issues this Opinion setting forth its reasoning and the corresponding relief.

## BACKGROUND

### I.     Oregon Right to Life

Plaintiff is a nonprofit organization, which advocates against the use of abortifacient contraceptives, which Plaintiff defines as "any drug, device, or procedure" which prevents pregnancy after the sperm and egg "have united [and] a new human life begins," and "abortion except where the mother's life is in imminent danger." Ver. Compl. ¶¶ 19, 30–31. Plaintiff believes in "the sanctity of human life from the moment of conception until natural death," which includes a belief that "it is a grave religious and moral wrong to deliberately cooperate, facilitate, or otherwise participate in some meaningful way in the provision of abortion or abortifacient 'contraceptives.'" Ver. Compl. ¶ 34. Plaintiff's beliefs "arise[] from Judeo-Christian religious beliefs . . . to which [Plaintiff] and those who control it subscribe." Ver. Compl. ¶ 34.

### II.    RHEA

The Oregon Legislature enacted RHEA to "ensure[] that Oregonians have access to comprehensive reproductive health care" including abortion and contraceptives, regardless of their income or insurance coverage. Jones Decl. Attach. 9 at 5, ECF No. 28-9. RHEA requires all health benefit plans in Oregon to "provide coverage" for abortion and "any contraceptive drug, device or product approved by the United States Food and Drug Administration." ORS § 743A.067(2)(g), (j). Further, a health benefit plan "may not infringe upon an enrollee's choice of

contraceptive drug, device or product and may not require prior authorization." *Id.* § 743A.067(2)(j)(D).

The Oregon Legislature included in RHEA three exceptions to the coverage requirements relevant here. First, health benefit plans are exempted from coverage "to the minimum extent necessary" if the enforcement of the requirements "may adversely affect the allocation of federal funds to [the] state." *Id.* § 743A.067(10). Second, religious employers may be exempted if they are an employer:

(a) [w]hose purpose is the inculcation[4] of religious values;

(b) [t]hat primarily employs persons who share the religious tenets of the employer;

(c) [t]hat primarily serves persons who share the religious tenets of the employer; and

(d) [t]hat is a nonprofit organization under section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code.

*Id.* § 743A.066(4) (call number added); *see id.* § 743A.067(1)(e) ("'Religious employer' has the meaning given that term in ORS 743A.066."); *see* 26 U.S.C. § 6033(a)(3)(A)(i), (iii) (referring to "churches, their integrated auxiliaries, and conventions or associations of churches" and "the exclusively religious activities of any religious order"). Finally, RHEA contains a legacy clause that exempts some health plans from covering abortion if the insurer "excluded coverage for abortion in all of its individual, small employer and large employer group plans during the 2017 plan year" and "has a certificate of authority to transact insurance in this state issued by the Department of Consumer and Business Services." ORS § 743A.067(7)(e).

---

[4] *See Inculcate*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/inculcate [https://perma.cc/A4SD-K5QB] (last accessed June 16, 2026) ("to teach and impress by frequent repetitions or admonitions").

Page 4 — OPINION AND ORDER

Plaintiff testified "against [RHEA] before two committees and ask[ed] for an exemption in the final legislation" before the Oregon Legislature enacted RHEA. Ver. Compl. ¶¶ 50, 51 ("Colm Willis, testifying for [Plaintiff], explained that the Bill didn't protect [Plaintiff] though it violated [Plaintiff]'s deeply held beliefs."). Plaintiff is not eligible for religious employer exemption under RHEA, because Plaintiff's "purpose is prolife advocacy, not inculcating religious values, and [because Plaintiff] doesn't primarily serve persons sharing its religious tenets." Ver. Compl. ¶ 8.

Under RHEA, Plaintiff resorted to an employee health benefit plan through Providence Health Plans ("PHP"), which is one of two entities exempted from abortion coverage under RHEA's legacy clause. Ver. Compl. ¶¶ 41-42; Jones Decl. Attach 1, ECF No. 28-1. Plaintiff's plan with PHP is inconsistent with Plaintiff's beliefs because it does not exclude abortifacient contraceptives, and it does not limit abortions to "case[s] of imminent danger to the mother's life." Ver. Compl. ¶¶ 42-44.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

Page 5 — OPINION AND ORDER

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

### I.    The Nature of Plaintiff's Challenge

The Court first assesses whether Plaintiff's claim is an as-applied challenge or a facial challenge to RHEA.

> An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular . . . activity, even though the law may be capable of valid application to others. A facial challenge seeks to strike down a law in its entirety and must therefore meet a more rigorous standard.

*Project Veritas v. Schmidt*, 125 F.4th 929, 939-40 (9th Cir. 2025) (citations and internal quotation marks omitted). The distinction "affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'" *Id.* at 939 (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)). Whether a claim is an as-applied or a facial challenge is determined not by its label but by whether the "claim and the relief that would follow . . . reach beyond the particular circumstances" of the plaintiff. *Id.* (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)).

Plaintiff's complaint refers to the claim as an as-applied challenge to RHEA. Ver. Compl. ¶ 98 ("The Mandate is unconstitutional as applied to [Plaintiff]."). The relief sought is also unique to the particular circumstances of Plaintiff. Plaintiff seeks a declaratory judgment that RHEA's abortion and contraceptive requirements are "unconstitutional as applied to [Plaintiff]."

Ver. Compl. 30. Plaintiff seeks an injunction requiring Defendant to *treat it* as a religious employer, preventing Defendant from enforcing RHEA *against it* in any way other than as a religious employer, and directing any future provided to *accommodate its* religious beliefs. Ver. Compl. 30. Plaintiff is uniquely situated with respect to RHEA in that Plaintiff is an organization with a sole, religiously motivated purpose opposed to RHEA's aim to expand access to reproductive health care. Ver. Compl. ¶¶ 27, 30, 32, 34. These circumstances support treating its claim as an as-applied challenge.

Plaintiff now asks the Court to treat its claim as a facial challenge, urging the Court to look beyond Plaintiff's particular circumstances and the relief sought in its complaint because, in its view, the Court must exercise its judicial responsibility to provide relief beyond the named parties in this case in light of the constitutional issues Plaintiff raises. Broader relief may indeed be appropriate where a court must assume a premise "that is itself in doubt" to reach the issues determining a claim before the court. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (considering broader relief where the Court had to reach the fundamental premise of restricting corporate speech). The Court finds no fundamental premise that it must consider in reaching Plaintiff's sought relief.

In light of the relief sought in Plaintiff's complaint, Plaintiff's particular circumstances, and the scope of the issue necessary to provide Plaintiff's relief, the Court concludes that Plaintiff's claim is an as-applied challenge.

## II.    The Religious Clauses of the First Amendment

### A.    Free Exercise Principles

The First Amendment, applied to the states through the Fourteenth Amendment, prevents states from enacting any law "respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *Fulton v. City of Philadelphia*, 593 U.S. 522, 532

(2021). These constitutional protections, known as the Free Exercise Clause and the Establishment Clause, are not limited to the practices and beliefs of individuals but also reach the religious and sincerely held objections of for-profit and non-profit organizations. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707-08 (2014) (stating the purpose of extending rights to corporations "protects the religious liberty of the humans who own and control those companies" and citing cases); *United States v. Ward*, 989 F.2d 1015, 1017-18 (9th Cir. 1992). The Ninth Circuit, in remanding this case, concluded that Plaintiff's objections to RHEA are sincerely held and religious. *Or. Right to Life*, 158 F.4th at 1023-24. Plaintiff's claims therefore fall "within the ambit of the First Amendment." *Ward*, 989 F.2d at 1017.

In considering whether a law infringes on religious freedoms, courts first determine which standard to apply. If a law burdening religious exercise is neutral and generally applicable, the rational basis test applies, and the law must be upheld if it is "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). If the law is not neutral or generally applicable, strict scrutiny applies; the government must demonstrate that the law is "justified by a compelling governmental interest and . . . narrowly tailored to advance that interest." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685 (9th Cir. 2023).

A law is not neutral and generally applicable if the law "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," treats comparable secular activities more favorably than religious exercise, or is hostile to or allows for subtle departures from neutral treatment of religious beliefs. *Fellowship of Christian Athletes*, 82 F.4th at 686-87 (citation omitted). The concept of

neutrality is rooted in the principle that the government cannot prefer certain religious practices or denominations over others. *Larson v. Valente*, 456 U.S. 228, 244-45 (1982) ("[The] constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the Free Exercise Clause.").

### B.    *Catholic Charities*

In *Catholic Charities*, a Catholic church-controlled non-profit social services organization brought an Establishment Clause claim after Wisconsin denied it a religious exemption from the state's unemployment compensation system. 605 U.S. at 241, 243-45, 249. The exemption applied to non-profits operated by churches if they were "operated primarily for religious purposes." *Id.* at 242 (quoting Wis. Stat. § 108.02(15)(h)(2). The Wisconsin Supreme Court found that Catholic Charities was not eligible for the exemption, interpreting "operated primarily for religious purposes" to require that the religious organization proselytize[5] or limit its services to those who shared its beliefs to qualify for the exemption. *Id.* at 249. The non-profit did not qualify because, consistent with its religious beliefs, it did not limit its services to fellow Catholics or use its charitable work to proselytize. *Id.* The non-profit appealed the denial, and the United States Supreme Court reversed. *Id.* at 247, 254. The Court applied strict scrutiny because the exemption "explicitly differentiat[ed] between religions based on theological practices," creating a denominational preference for religions that proselytize or serve only co-religionists that "facially favors some denominations over others." *Id.* at 250, 252. The exemption failed to pass strict scrutiny because it was not "closely fitted" to the state's interests in avoiding

---

[5] *Proselytize*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/proselytize [https://perma.cc/Z2ZS-NA7D] (last accessed June 16, 2026) ("to induce someone to convert to one's faith").

entanglement between church and state or ensuring employment coverage for its citizens. *Id.* at 252-53. As applied to the non-profit, the exemption violated the First Amendment. *Id.* at 254.

### III.     Plaintiff's Challenge to RHEA

Plaintiff challenges three parts of RHEA's statutory scheme under the First Amendment: Plaintiff claims (1) the definition of religious employer violates the denominational neutrality principle of the First Amendment, (2) the legacy exemption amounts to a preference for the religious views of Providence Health Plans, and (3) the federal funds exemption provides the state with improper discretion to choose amongst different religious employers. The Court does not reach the legacy exemption and the federal funds exemption, because it finds that RHEA's religious employer definition, as applied here, violates Plaintiff's religious liberties and that conclusion is sufficient to grant Plaintiff's proper relief.

#### A.     RHEA's Religious Employer Exemption

##### 1.     The Neutrality Principle of the Religious Clauses

At the outset, Defendant argues that *Catholic Charities* does not control this case because it is an Establishment Clause case, and Plaintiff here brings a free exercise challenge. The Court disagrees. The Ninth Circuit, in remanding this case, directed this Court to assess whether the exemption "violates the First Amendment's Religion Clauses." 158 F.4th at 1024. Moreover, the narrow approach Defendant advances is undercut by First Amendment jurisprudence. *See, e.g.*, *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994) (stating "[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion") (citation omitted); *Cath. Charities*, 605 U.S. at 247-48 (recognizing that the religious liberty of the First Amendment's Religion Clauses mandate "that the government refrain from favoritism among sects") (internal citation marks and

quotation marks omitted); *Larson*, 456 U.S. at 245; *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 533 (2022) (recognizing the "complementary purposes" of the two clauses).

Aside from differences in how the complaint labels the claim, this case and *Catholic Charities* are significantly similar. Both Wisconsin's exemption in that case and Oregon's here condition eligibility on serving only co-religionists. *Cath. Charities*, 605 U.S. at 249; ORS § 743A.066(4)(c) (stating the requirement that a religious employer "primarily serve[] persons who share the religious tenets of the employer"). The exemptions require that the organization inculcate (teach) or proselytize (convert others to) their religious views. *Cath. Charities*, 605 U.S. at 249; ORS § 743A.066(4)(a). Just as these requirements led the Supreme Court to hold that Wisconsin's exemption "facially differentiates among religions based on theological choices," *Cath. Charities*, 605 U.S. at 251, they signal that RHEA's religious employer exemption also runs afoul of the neutrality principle of the First Amendment.

Defendant advances three main arguments to distinguish this case from *Catholic Charities*. First, Defendant argues that Plaintiff here, unlike the non-profit organization in *Catholic Charities*, does not have a religious objection to satisfying the exemption's criteria. That is, Defendant argues that Plaintiff cannot prevail unless its religious beliefs prevent it from having a primary purpose to inculcate religious values and serve individuals who share its beliefs. Defendant reads *Catholic Charities* too narrowly. The decision to inculcate religious beliefs or limit services to co-religionists is fundamentally a theological one, and an exemption "that excludes religious organizations from an accommodation on such grounds facially favors some denominations over others." *Id.* at 252. Moreover, Plaintiff's actions and purposes, which do not include inculcation or serving only co-religionists, are motivated by its religious beliefs.

Page 11 — OPINION AND ORDER

Ver. Compl. ¶¶ 34-35 (stating Plaintiff's religious "beliefs about the sanctity of human life motivate its actions").

Defendant next points to *Youth71Five*, a post-*Catholic Charities* Ninth Circuit decision, to support its argument that RHEA's religious employer exemption is neutral. In that case, an Oregon agency withdrew a conditional grant award to a religious organization that hired only those who affirmed its statement of faith and affiliated with a local church under an agency anti-discrimination rule. *Youth 71Five Ministries v. Williams*, 160 F.4th 964, 976 (9th Cir. 2025). The rule did not impose a denominational preference because it imposed only a "general prohibition on religious exclusion by all grantees, whether faith-based or not," that resulted in the incidental impacts on religious organizations that engaged in such practices. *Id.* at 980. The rule therefore was neutral to religion because any exclusion of a religious organization was an indirect consequence of the rule's secular criteria. *Id.*

RHEA, unlike the agency rule in *Youth 71Five*, imposes religious criteria. By its terms, it limits eligibility to only religious organizations that inculcate their beliefs or serve co-religionists. Such a restriction is distinct from a "general prohibition" rooted in secular criteria that happens to impact certain religious beliefs. In other words, RHEA's specific exemptions involving religious criteria depart from the secular rule at issue in *Youth 71Five* and indicate a preference for certain religious practices.

Finally, Defendant argues *Catholic Charities* is distinguishable because that case involved a church-controlled organization, and Plaintiff here is not associated with a church. Defendant argues this distinction is significant because RHEA requires church affiliation, and such requirements have been upheld. The Ninth Circuit has recognized that "federal statutes have long drawn the distinction between churches and other religious organizations" and stated that

such distinctions are constitutional where they rely on "neutral, objective organizational criteria." *Rollins v. Dignity Health*, 830 F.3d 900, 911 (9th Cir. 2016) (citing statutes and cases), *rev'd on statutory grounds sub nom.*, *Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 483-84 (2017). *But see Spencer v. World Vision, Inc.*, 633 F.3d 723, 728-29 (9th Cir. 2011) (O'Scannlain, J., concurring) (expressing concern over the constitutionality of distinguishing between church and non-church entities). *See also Cath. Charities*, 605 U.S. at 279 (Jackson, J., concurring) (discussing how states could exempt only church affiliates from an unemployment insurance system to avoid entanglement issues).

While church and non-church distinctions may be permissible in other contexts, RHEA's criteria here are not neutral or objective. RHEA's religious employer exemption expresses a preference for religious organizations who inculcate and only serve members of the same religion. Defendant therefore owes the burden to show that RHEA passes strict scrutiny.

2.      Strict Scrutiny

Under strict scrutiny, the government must demonstrate that the law is "justified by a compelling governmental interest and . . . narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32. Defendant justifies RHEA as ensuring comprehensive reproductive health care for all Oregonians but fails to explain how the exemption serves that interest. Defendant does not explain how exempting organizations that inculcate or only serve co-religionists and requiring other religious organizations to comply has any relationship to ensuring reproductive care for all Oregonians. The mere aim to limit the number of exceptions does not pass constitutional muster. *Holt v. Hobbs*, 574 U.S. 352, 368 (2015). RHEA's religious employer exemption is therefore not "closely fitted" to Defendant's interest, *Cath. Charities*, 605 U.S. at 253, and it is unconstitutional as applied to Plaintiff's religious views.

**B.    Relief**

Plaintiff argues that this Court should (1) issue declaratory relief that RHEA's mandate that health plans cover abortifacient contraceptives is unconstitutional as applied to Plaintiff and all other employers objecting to the mandate on religious grounds and (2) enjoin Defendant from enforcing the mandate against those employers or insurers who accommodate employers with those views. The Court declines to grant relief to "all other employers" with similar objections to RHEA and their would-be insurers because Plaintiff's claim is an as-applied challenge. The normal remedy is therefore aimed at the "particular circumstances" of the plaintiff. *Project Veritas*, 125 F.4th at 940. "[A] successful as-applied challenge invalidates only the particular application of the law." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also id.* at 1179 (modifying the district court's relief "to apply only to plaintiffs").

1.    Declaratory Relief

Requested declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading*, 873 F.2d 229, 231 (9th Cir. 1989) (citation omitted). The Court finds that a declaratory judgment clarifies and settles the legal dispute at issue in this case and affords Plaintiff relief from RHEA's statutory scheme.

2.    Injunctive Relief

Injunctions are extraordinary remedies and should not be awarded as a matter of course. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019).

> To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy

Page 14 — OPINION AND ORDER

in equity; and (5) that the public interest would not be disserved by a permanent injunction.

 *Id.* (citations omitted). Although "the practical effect of (injunctive and declaratory) relief will be virtually identical, a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary." *Wooley v. Maynard*, 430 U.S. 705, 711 (1977) (citations and internal quotation marks omitted).

The Court finds that an injunction is not necessary in this case because declaratory relief is sufficient to protect Plaintiff's interests. The record contains no evidence that Defendant, a state official, will not abide by a declaratory judgment, and Defendant has represented that it will obey this Court's order.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for a Preliminary Injunction (ECF No. 11) is converted into a motion for summary judgment and is GRANTED. Plaintiff's Second Motion to Consolidate (ECF No. 70) is DENIED as moot.

As applied to Plaintiff, the Religious Employer Exemption of the Reproductive Health Equity Act, ORS §§ 743A.066-067, is unconstitutional. Judgment shall be entered accordingly.

DATED this 1st day of July 2026.

> s/Mustafa T. Kasubhai
> Mustafa T. Kasubhai (he/him)
> United States District Judge